**Murvin JOHNSON, Plaintiff-Appellant,**

**v.**

**Fred E. SANDWEG, Defendant-Respondent.**

**No. 50075.**

Supreme Court of Missouri,

Division No. 2.

May 11, 1964.

James F. Koester, St. Louis, for appellant.

Schwartz & Ely, Robert C. Ely, St. Louis, for respondent.

PAUL VAN OSDOL, Special Commissioner.

Action for $35,000 damages for personal injuries sustained by plaintiff in a motor-vehicular collision at and in the intersection of Grand Avenue and Hebert Street in the city of St. Louis. The jury returned a nine-juror verdict for defendant, and plaintiff has appealed from the ensuing judgment.

Herein, plaintiff contends errors of the trial court in instructing the jury and in the admission of evidence.

On former trial of this case, plaintiff had verdict and judgment for $10,000·damages, but on appeal to the St. Louis Court of Appeals the judgment for plaintiff was reversed because of error in an instruction given at the instance of plaintiff, and the cause was remanded. Johnson v. Sandweg, Mo.App., 351 S.W.2d 806.

At the intersection of Grand Avenue and· Hebert Street in St. Louis, Grand Avenue, a north-south "through" street, is eighty feet wide, and Hebert Street, an east-west street, is thirty-six feet wide. There are north-bound and southbound streetcar tracks in the center of Grand. · These two tracks are five feet four inches apart, and the rails of each track are four feet ten inches apart. ' Sometime since the casualty, the use of these streetcar tracks has been abandoned; but, at the time of the casualty, there was a safety zone for pedestrians on the west side of the west (southbound) streetcar track. The safety zone was seventy-six feet long, the south end of it being thirty-eight feet north of the north curb line of Hebert. The safety zone was outlined in paint and was protected by three sixteen-inch metallic "mushrooms", and a concrete pylon five feet in diameter with blinker light at the north end of the zone. The evidence is obscure in tending to show whether or not there was a pylon at the south end of the zone. The west edge of the safety zone was twenty-five feet four inches from the west curb of Grand; and the western-most rail of the streetcar tracks was thirty-two feet ten inches from the west curb of Grand.

Plaintiff, Murvin Johnson, was driving his 1958 Skoda automobile with hood three feet high. He was southbound on Grand. Defendant, Fred E. Sandweg, was driving his 1956 Ford pick-up sixteen and nine-tenths feet long with stake body ·and bed four feet from the ground. He was west-bound on Hebert.

Plaintiff testified that as he drove southwardly on Grand at twenty-eight, thirty miles per hour and had come to a point about sixty feet north of the north curb of Hebert, he saw defendant's truck stopped with the front of the truck at the westernmost streetcar rail. Plaintiff was moving in the southbound lane immediately west of the safety zone. Plaintiff eased up on the accelerator; glanced at the rear-view mirror; observed a taxicab eastbound on Hebert which had stopped at the stop sign at the southwest corner of the intersection; and looked out for pedestrians, having reduced speed to twenty to twenty-three miles per hour. He then looked back toward defendant's truck and saw that it had moved eight to ten feet forward into the southbound lanes of Grand. Plaintiff's vehicle was then but thirty-five feet from the intersection. Defendant's truck "shot out in front of" plaintiff's Skoda. Plaintiff attempted the application of brakes and swerved to the right, but his Skoda struck defendant's Ford at the right running board and right door of the cab when the front of the Ford had moved to a point about even with the west curb line of Grand.

Defendant testified that, in driving westwardly on Hebert, he had stopped at the stop sign at the northeast corner of the intersection, and had then moved across the northbound lanes of Grand, bringing his truck to a stop with the front end at the westerly rail of the southbound streetcar track; this, to await the passage of an automobile southbound on Grand. He also saw plaintiff's car moving southwardly on Grand one hundred fifty or two hundred feet north of the intersection. On being asked to express in "car lengths" the distance plaintiff's car was then north of the intersection, defendant said, "I figure around five or six car lengths." Defendant believed he had time to cross on over the southbound lanes of Grand, and so he moved his vehicle westwardly and had attained the speed of ten miles per hour when the front of his truck had reached a point even with the west curb line of Grand, when the Skoda struck his Ford.

The trial court submitted plaintiff's case to the jury on the theory of negligence of defendant in failing to yield to plaintiff the right of way across the intersection; and, at defendant's instance, the trial court gave defendant's verdict-directing Instruction No. 4, which was as follows—

"You are instructed that the law requires that an automobile driver must exercise the highest degree of care in the operation of his automobile. If an automobile driver fails to exercise the highest degree of care, he is negligent.

"You are therefore instructed that if you find and believe from the evidence that on the occasion in question as plaintiff was driving southwardly on Grand Avenue and approaching Hebert Avenue, the truck driven by defendant Fred Sandweg was stopped near the center of the intersection and headed west, and if you find that the truck then began to move westward across the southbound lanes of Grand Avenue, and if you find that plaintiff saw or by the exercise of the highest degree of care would have seen the truck so moving in time thereafter for plaintiff in the exercise of the highest degree of care to have stopped or slowed his automobile so as to have avoided running into the side of the truck but that plaintiff failed to so stop or slow his automobile and was thereby negligent, and if you find that such negligence of plaintiff caused or directly contributed to cause the collision of plaintiff's automobile into the side of the truck, then you are instructed that plaintiff is not entitled to recover in this case, and your verdict must be in favor of defendant, and this is so even though you may also find that defendant Fred E. Sandweg was also negligent as submitted to you in other instructions."

Plaintiff-appellant contends the instruction is erroneous in that the instruction

failed to hypothesize sufficient facts upon which the jury could base its verdict, thus giving the jury a roving commission, and confusingly misdirected the jury concerning the point at which defendant's vehicle was brought to a stop before the defendant moved on across the southbound lanes of Grand. Also plaintiff contends the instruction was erroneous in failing to submit plaintiff's actual or constructive knowledge that defendant intended to proceed on across the intersection after defendant had stopped his vehicle in the center of the intersection; plaintiff says that, until defendant had moved his truck westwardly into the southbound lanes of Grand, plaintiff had no duty to slacken speed or stop because there was then no apparent danger of a collision.

Having examined the instruction, we believe it fairly and simply submitted the one essential or basic factual issue of the submitted contributory negligence of plaintiff. The one stated essential but disputed factual question being—could plaintiff in the exercise of the highest degree of care have averted the collision, by stopping or slackening speed, after defendant's vehicle moved out into the southbound lanes of Grand?

The instruction is here being considered as particularly applied to the facts of this case. It has been seen plaintiff's evidence tended to show that defendant moved westwardly into the southbound lanes of Grand at a time in plaintiff's southbound movement when plaintiff in the exercise of the highest degree of care could not have avoided colliding with defendant's vehicle. Contrarily, defendant's evidence tended to show that had plaintiff been exercising the highest degree of care plaintiff would have seen defendant's vehicle in its westbound movement in time to have stopped or slackened the speed of his Skoda, and thus to have averted the casualty.

We have noticed the Instruction No. 4 submitted that the truck driven by "defendant Fred Sandweg was stopped near the center of the intersection," and we have noticed the evidence introduced on the part

of plaintiff and on the part of defendant was that defendant had stopped his vehicle with the front end thereof at the westernmost rail of the streetcar tracks. This point was in fact near the center of the intersection because, the front end of defendant's truck being at the westernmost rail, the length of the truck spanned the four rails of the two streetcar tracks in the center of Grand. The jury, therefore, could not have been mistaken or confused as to where it was defendant's vehicle had stopped and so the jury could not have been mistaken or confused as to the point from which defendant's vehicle "began to move westward across the southbound lanes of Grand."

The instruction did not submit duty of plaintiff to act while defendant's truck was stopped near the center of the intersection. It submitted plaintiff's duty to act and consequent negligence in failing to act *after* plaintiff saw or in the exercise of the highest degree of care would have seen the truck "so moving" west across the southbound lanes of Grand.

Here we think we clearly see an hypothesis in the instruction that plaintiff had actual or constructive knowledge that defendant was going to move across the southbound lanes of Grand and an hypothesis of an apparent danger of a collision were unnecessary because these facts were supplied by the undisputed evidence of what plaintiff saw or could have seen, that is, defendant's westbound movement across the southbound lanes directly into and across the pathway of plaintiff's southbound vehicle.

It is true in some cases it correctly has been held necessary to require a finding of an apparent danger of collision, giving rise to a duty to act, in the shown circumstances of those cases. For instance, see the case of Stakelback v. Neff, Mo.App., 13 S.W.2d 575, cited and relied on by plaintiff. In that case the "offset" intersection of Jefferson and Lucas avenues brought the Foley vehicle, eastbound on Lucas, southeastwardly across Jefferson with various possibilities of timing and route in moving across Jeffer-

son and into collision with the Neff automobile in which vehicle plaintiff Stakelback was riding and which vehicle was moving northwardly on the east (northbound) streetcar track on Jefferson. When the Foley vehicle had emerged from the west into Jefferson it was not at once apparent, as in our case, that the Foley automobile would pass directly into the pathway of the Neff vehicle.

Although we have considered plaintiff's contentions of error in giving the Instruction No. 4, and have approved the instruction in the factual situation supported by the evidence as introduced in the instant trial of this case, our opinion is only advisory as to the use of the instruction in like factual situations supported by evidence in some other case or upon retrial of the instant case. This is because our opinion as to Instruction No. 4, does not make final disposition of this case. We have seen in our examination of the record the admission into evidence of extraneous matters which we deem prejudicial, depriving plaintiff of a fair trial on the merits of his claim.

As a result of the collision plaintiff suffered the rupture of an intervertebral disc. The fourth and fifth lumbar vertebrae were involved. Plaintiff consulted and was treated by physicians, including Ernest H. Parsons, M. D., who had died prior to trial. Finally an operation was necessary to repair the injured spine.

In the course of the trial, plaintiff's counsel produced and caused the identification of the hospital record and the notes and report of the consultation and treatment of plaintiff by Doctor Parsons. This, in part, for the purpose of proving charges for hospital, surgery and medical services.

During the introduction of evidence on the part of defendant, counsel for defendant spoke to plaintiff's counsel and to the trial court as follows—

"Mr. Ely (counsel for defendant): Do you have the report from Dr. Parsons which was identified? Just give

me the whole record. Anything I don't read, why, you may, of course * * *. This is reading from what has been marked as Plaintiff's Exhibit 4, which are the records of Dr. Parsons, who is now deceased, and there is no question but what that is true. The first item is the bill, which has been identified already. * * * This is also from the hospital record. Here we have the consultation notes from Dr. Parsons * * *.

"Mr. Koester (plaintiff's counsel): Well, your Honor, this I will object to some portion, I have no objection to the examination and treatment and so forth, some of these are personal history, his family history and things of that kind which I feel are irrelevant and hearsay and for that I will object to those. Anything to do with his physical condition, I have no objection to.

"Mr. Ely: I intend to read the Doctor's History, as he took it for his purposes, for what it was worth to him in making his determination of the condition of this man and I think it is very pertinent as to what he determined from the man.

"The Court: All right, I will overrule the objection."

Counsel for defendant then read to the jury the Doctor's notes on his consultations with plaintiff, plaintiff's previous medical history, mental status, the Doctor's physical examination of plaintiff, and other data, in all comprising approximately ten pages of the transcript of the record, including the following—

"* * * He (plaintiff) states that he has been married three times. His first marriage was in 1948; this marriage was terminated by divorce in 1952. His second marriage was in 1953; this marriage was terminated by divorce in 1954. His present marriage was in 1955. His wife is twenty-six years of age. * * * He states

that he has two children, a daughter aged ten years by his first marriage, and a daughter aged two and a half years by his present marriage.
* * *"

Defendant-respondent is hard pressed in his brief in urging eight justifications for ruling adversely to plaintiff's contention of error in the admission into evidence of the quoted portions of the Doctor's notes, but none of such arguments soundly justifies it. One of the arguments is that plaintiff's counsel did not state reasons for the objection. It would be difficult indeed to state reasons more aptly and succinctly than by saying the quoted portions of the notes (which plaintiff's counsel referred to as personal and family history and which, no doubt, plaintiff's counsel would have pointed out to the trial court had the opportunity been afforded) were irrelevant and hearsay, as plaintiff's counsel said. We have no reason to question defendant's assertion that Doctor Parsons was an "eminent neuro-psychiatrist" (and see Smith v. Wabash R. Co., Mo.Sup., 338 S.W.2d 16, in which case the principally litigated issue was whether the plaintiff in fact sustained an injury); but even though the portions of the Doctor's notes were timely made in regular course of the Doctor's consultation and treatment of plaintiff, the quoted portions were relegated to the hearsay rule of exclusion, we think, because irrelevant for any purpose in sustaining the issues of the instant case in which there was no claim that plaintiff's physical injuries and extent of them resulted from or in any kind of psychosis. In fact the Doctor's notes and report show the Doctor, himself, was in consultation with the neuro-surgeon who subsequently removed the intervertebral disc, the rupture of which a myelogram and a discogram had indicated and defined.

But the study of the above-quoted colloquy in and preceding the trial court's ruling shows that the trial court gave the court's quick, definite and final approval by ruling, in effect, that *anything* plaintiff had stated to the Doctor which was contained in the Doctor's notes pertaining to the history the Doctor took for his purpose was "very pertinent" in the trial of the issues of this case. Thus, by the admission and reading into evidence of the quoted portions of the Doctor's notes, was brought into the trial of the case, and made "very pertinent" the implication that plaintiff, thrice married and twice divorced, was irresponsible in marital and parental relationships, and subjected plaintiff to the scorn of those jurors who may have looked askance upon divorce and remarriage. So we say we think the admission into evidence of the quoted notes was prejudicially erroneous in this case.

The judgment should be reversed, and the cause should be remanded.

It is so ordered.

PER CURIAM.

The foregoing opinion of PAUL VAN OSDOL, Special C., is adopted as the opinion of the Court.

All of the Judges concur.