**Everett F. BARRON,**
**Plaintiff-Appellant,**

v.

**MISSOURI–KANSAS–TEXAS**
**RAILROAD COMPANY,**
**Defendant-Respondent.**

No. 48445.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 20, 1985.

Randolph E. Schum, East Alton, for plaintiff-appellant.

Robert C. Ely, St. Louis, for defendant-respondent.

STEPHAN, Chief Judge.

Plaintiff Everett F. Barron appeals from a judgment for defendant Missouri-Kansas-Texas Railroad Company on his claim for personal injuries under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., based on a jury verdict in favor of defendant. We reverse and remand for a new trial.

On March 6, 1979, Everett Barron, a car inspector for the Missouri-Kansas-Texas Railroad Company, fell from the top of a gondola car which he had been inspecting, and injured his left foot. The ground surface in the area surrounding the gondola car had been covered with soybean mash. While lying on the ground after his fall, plaintiff noticed wet soybean mash on the bottom of his shoe. Plaintiff claims he orally reported the fall to his foreman, John Schlessman, that same day. No written report of the accident was filed by plaintiff until five months after the accident.

Originally, plaintiff's injury was treated with bandages and cortisone shots, but on November 30, 1979, plaintiff had an operation on his left heel. Approximately two years later, an additional operation was necessary to remove scar tissue that had formed after the first operation. At the time of trial, plaintiff continued to suffer numbness in his left foot from the arch to the heel, and also from pain in his heel.

On November 28, 1979, plaintiff stopped working at Missouri-Kansas-Texas Railroad. He attempted to go back to work at the railroad in April of 1980, and was given a physical examination for this purpose, but was turned down by the doctor because of the numbness in his foot.

■ In his first point on appeal, plaintiff maintains that the trial court erred in permitting testimony that plaintiff had three brothers who were receiving disability pensions. Plaintiff argues that this evidence was neither material nor relevant, and its sole purpose in being injected into the case was to prejudice the jury. Respondent replies that the evidence was relevant to its theory of the case, which it states in its brief as being that plaintiff had made a false claim, and no accident actually occurred. We agree with plaintiff that the references to his three brothers on disability were irrelevant and prejudicial.

It has long been held to be reversible error to permit a plaintiff in a personal injury case to testify as to the number of his children where the purpose of such testimony is to evoke the sympathy of the jury. *Donze v. Swofford,* 368 S.W.2d 917, 921 (Mo.App.1963). Similarly, it has been held to be reversible error in a personal injury case to permit defendant's counsel, under the guise of reading from an otherwise admissible medical report, to inform the jury that the plaintiff had been married three times and divorced twice. Such information was irrelevant to the medical condition for which plaintiff had been treated "and subjected plaintiff to the scorn of those jurors who may have looked askance upon divorce and remarriage." *Johnson v. Sandweg,* 378 S.W.2d 454, 459 (Mo.1964).

In the instant case, the intended effect of the evidence concerning plaintiff's three brothers on disability was to plant in the minds of the jurors the notion that plaintiff was possessed of some familial propensity to assert a fraudulent claim of disability. Such trial tactics are totally impermissible; the physical condition of his brothers was irrelevant to the issue under which the defendant claims its justification: whether the accident happened at all.

References to plaintiff's brothers were made on several occasions during the course of the trial. At one point in the cross-examination of plaintiff, defendant's attorney had plaintiff read from his deposition in an unrelated case in which plaintiff had asserted a claim for a back injury suffered while he was in a J.C. Penney store. The portion of the deposition which was read over plaintiff's objection included the information that the incident was witnessed only by a brother on disability. This information concerning his brother's physical condition had no relevance to any issue in the case at bar, and did not impeach anything plaintiff said in this trial. In addition, defendant called several other witnesses who were permitted, over objection, to testify that plaintiff had told them he intended to get on disability status like his brothers. Although testimony concerning plaintiff's stated intention is relevant to the issue of whether or not the accident occurred, evidence concerning the respective physical conditions of plaintiff's brothers is not. That the statements of intent were in contextual reference to the brothers does not justify evidence concerning their conditions. The rule is well stated that, "if certain evidential material, having a legitimate probative value, tends nevertheless to produce also, over and above its legitimate effect, an unfair prejudice to the opponent, ... there is good ground for excluding such evidence, unless it is indispensable for its legitimate purpose." VI Wigmore On Evidence, 3rd Ed., § 1834, pp. 489–491, *quoted in Daniels v. Dillinger,* 445 S.W.2d 410, 418 (Mo.App.1969). The references to the brothers had no legit-

imate purpose. Thus, we conclude that the mention of plaintiff's brothers on disability, both on cross-examination of plaintiff and through defendant's witnesses, was erroneous and should be avoided upon retrial of this cause.

Plaintiff's second and third points focus on defendant's reference in opening and closing arguments to deposition testimony given by a physician in plaintiff's case against the J.C. Penney Company and cross-examination of plaintiff as to what the physician had told plaintiff. In the opening statement defendant's attorney told the jury that he would present evidence that the physician in the Penney case testified that, "This man because of his back will never be able to work again." Plaintiff's objection to the statement from "a different case" was overruled. During the course of the trial, defendant called an employee of the United States District Court in which the Penney case had been lodged. She identified the court file, including the deposition of a Dr. Milton T. English. When defendant's attorney attempted to have her read from Dr. English's deposition, plaintiff's counsel properly objected on the grounds that he did not represent the plaintiff in the Penney case, did not have the opportunity to cross-examine Dr. English, and that "this is hearsay." The objection was sustained, and Dr. English's testimony was not read. Nevertheless, in closing argument, defendant's attorney stated that Dr. English told plaintiff he could never work again because of his back and "so testified in the Penney's case."

■ The purpose of an opening statement is to acquaint the court and jury with the facts a party intends to place into evidence but it "should not include facts which are plainly inadmissible." *Cantrell v. Superior Loan Corporation*, 603 S.W.2d 627, 641–642 (Mo.App.1980). Dr. English's deposition in the Penney case was hearsay evidence in the case at bar. Aside from the fact that no effort was made by defendant to make a showing that Dr. English was engaged in the practice of

his profession at the time of trial so as to permit the use of a deposition under any circumstances, Rule 57.07(a)(3)(C), Dr. English's testimony was not susceptible to cross-examination by plaintiff's attorney in this case which involved different issues and different attorneys. *Bartlett v. Kansas City Public Service Co.*, 349 Mo. 13, 160 S.W.2d 740, 742–743 (1942). It was, therefore, error to permit reference to such testimony in the opening statement and in the cross-examination of plaintiff. *Cantrell*, supra, 642. Even assuming defense counsel's good faith up to the point where the objection to the reading of Dr. English's deposition was sustained, direct and intentional reference to it in closing argument mandates a reversal and new trial.

■ Plaintiff also argues that the Missouri Approved Instructions fail to properly instruct the jury in an F.E.L.A. action in conformity with federal law, and thus the trial court erred in rejecting plaintiff's tendered instructions. We are unable to pass on this point, as the instructions which were actually given to the jury by the trial court are not set out in plaintiff-appellant's brief, contrary to the directives of Rule 84.04(e). Neither are the instructions to be found in the legal file. The only indication of which instructions were given is found in a cursory mention in respondent's brief. Assuming that M.A.I. 24.01 was the instruction given, we note that this instruction, which is mandatory in F.E.L.A. cases, provides that the jury find for the plaintiff where "such negligence directly resulted *in whole or in part* in injury to plaintiff," thus incorporating the more liberal, federal statutory standard. *White v. St. Louis-San Francisco Ry. Co.*, 539 S.W.2d 565, 569–570 (Mo.App.1976). See also *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, 499 (1957). In formulating the instructions upon retrial, the parties should take into account the principles recently articulated in *St. Louis Southwestern Ry. Co. v. Dickerson*, —— U.S. ——, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985), and the opinion of this Court upon remand. *Dickerson v. St.*

*Louis Southwestern Railway Company,* 684 S.W.2d 514 (Mo.App.1985).

It is unlikely that plaintiff's remaining points will arise upon retrial, and we therefore do not discuss them.

The judgment is reversed and remanded for a new trial in conformity with this opinion.

SIMON, P.J., and KAROHL, J., concur.