PEARL HUNT v. KANSAS CITY, Appellant.—131 S. W. (2d) 514.

Division One, September 14, 1939.*

*Fred Bellemere* and *John J. Cosgrove* for appellant.

---

*NOTE: Opinion filed at May Term, 1939, July 7, 1939; motion for rehearing filed; motion overruled at September Term, September 14, 1939.

*Prince & Beery, Walter A. Raymond* and *Fenton Hume* for respondent.

CLARK, J.—Plaintiff filed suit in the Circuit Court of Jackson County against the City of Kansas City and two individual defendants, Hawk and Phelps, asking damages for personal injuries due to falling into an open coal hole on a public sidewalk. The jury returned a verdict in favor of the individual defendants, and against the city for the sum of $10,000.

The city has appealed and assigns two grounds of error: (1) that Instruction No. 1, given at request of plaintiff, is erroneous; (2) that the verdict is excessive.

Plaintiff's Instruction No. 1 in the first paragraph told the jury that if defendants, Hawk and Phelps, in wrecking a certain building negligently left a certain coal hole uncovered and without any barricade or warning sign; "and if you so find that said unclosed and uncovered coal hole constituted a condition that was not reasonably safe for pedestrians traveling along said public sidewalk, if so;" etc., they should return a verdict against said individual defendants.

The second paragraph of the same instruction reads in part as follows:

"You are further instructed *that if in addition to the foregoing you further find and believe from the evidence* that Washington Street at the place where said coal hole was left open and uncovered, if you so find, was a traveled public street and thoroughfare within the corporate limits of the City of Kansas City, Missouri, *and that said coal hole was negligently suffered or permitted to remain open or uncovered in said sidewalk for several weeks before said date, and for such length of time before said occurrence that the defendant Kansas City, by the exercise of ordinary care knew, or could have known, thereof, if you so find, in sufficient time so that thereafter by the exercise of ordinary care the said City could have remedied said conditions or caused said hole to be covered, if so, and could thereby have prevented the injury to plaintiff,* if so; and that the defendant City negligently failed so to do, if so; and as a direct result thereof plaintiff, while in the exercise of ordinary care for her own safety, stepped into said coal hole and was injured, if so;"

Appellant complains of that part of the instruction which reads as follows: "could have remedied said condition or caused said hole to be covered, if so, and could thereby have prevented the injury to plaintiff, if so." Appellant says that such language enlarges the measure of duty required by defendant and tells the jury, in effect, that the city was obliged to prevent an injury to the plaintiff at any and all hazards, citing: Root v. K. C. So. Ry., 195 Mo. 348, 350, 92 S. W. 621; Fath v. City (Mo. App.), 115 S. W. (2d) 75; Allen v. City (Mo. App.), 64 S. W. (2d) 765; Bayne v. City (Mo. App.), 253 S. W. 116; Robertson v. Wabash Ry., 152 Mo. 382, 53

S. W. 1082; Sutter v. Kansas City, 138 Mo. App. 105, 119 S. W. 1084.

The cases of Root v. K. C. So. Ry., supra, and Sutter v. Kansas City, supra, each turned on the meaning of the word "liable." The Root case held the word "liable" to mean, "within the range of possibility" and an instruction was held erroneous which told the jury that it was the duty of the railroad to keep its right-of-way free of combustible material which would be "liable" to take fire, etc. The Sutter decision was based on the Root case. The other cases cited by appellant follow the general rule that defendant is not an insurer, but is only required to exercise ordinary care to provide a reasonably safe place and has a reasonable time to correct defects after same become known, or should become known by the exercise of ordinary care.

▮ The above citations are in point if appellant's view of the instruction is correct, but we believe appellant misreads the instruction. The instruction requires the jury to find: that the hole was left open, which constituted a condition not reasonably safe for pedestrians; that the hole was negligently left open for several weeks and for such length of time that the city by the exercise of ordinary care could have known in sufficient time so that thereafter by the exercise of ordinary care the city could have remedied such conditions (that is, the uncovered condition of the hole) or caused the hole to be covered and could *thereby* (that is, by remedying the uncovered condition or covering the hole), prevented injury to plaintiff, and defendant negligently failed to do so (that is, failed to exercise ordinary care to remedy the uncovered condition, etc.)

The words "and could thereby have prevented injury to the plaintiff" could have been omitted without injury to the instruction. In fact, the instruction would have read better without those words, but their inclusion does not authorize the jury to return a verdict against defendant if it "could have prevented the injury and negligently failed to do so" (as appellant seems to think), but authorizes such a verdict only "if defendant could have prevented the injury *by the exercise of ordinary care to cover the hole* and negligently failed to do so." Reading the instruction in its entirety we do not believe it misled the jury as to the measure of duty owed by the defendant. [Drake v. Pub. Service Co., 333 Mo. 535, 63 S. W. (2d) 75; Larey v. Ry., 333 Mo. 949, 64 S. W. (2d) 681; Garard v. Coal Co., 207 Mo. 242, 105 S. W. 767; Gibler v. Terminal Ry., 203 Mo. 208, 101 S. W. 37; Jerowitz v. Kansas City, 104 Mo. App. 202.]

▮ On the question of the amount of the verdict, both appellant and respondent have cited a large number of cases, but we find them of little aid because of the difference in the facts considered.

The plaintiff testified that she received her injuries on May 7, 1930; that she stepped into an open coal hole with her left foot; that her

right knee struck the metal rim of the hole and her right hand struck the sidewalk; that a companion helped her up and she continued on to a grocery store, made some purchases and then walked to her home; that when she reached home she washed her hand and knee, both being bloody; that she ached all over, suffered severe pain in the back of her head, the top part of her spine and her right shoulder; that she continued to suffer and after three days called Dr. A. J. Welch (Dr. Welch has since died and his testimony was not taken); that she was menstruating at the time of the accident and this stopped, causing her to bloat; that the doctor placed wide tape around her abdomen, also taped her shoulder; that on the doctor's third trip to her home he found she had two hernias; that he caused her to go to bed and lie on her back with her feet elevated for two weeks; then for about a month she was able to be out of bed for a part of each day; that she continued to go to the doctor's office for treatment for some months; that the doctor told her an operation was the only way to correct the hernias; that she continued to suffer from the hernias at times, having a severe attack in 1933, at which time she was attended by Dr. Carrier; that in 1936 she had an operation for the hernias, being in the hospital for two weeks; that she was taken home in an ambulance and remained in bed for four weeks attended by a practical nurse; that she still has a drawing sensation and some pain around the incisions; that there is a grating sensation and noise in her right knee and some times it locks and causes her to fall; that this is accompanied by sharp pain. Plaintiff also said she had an operation for appendicitis and for another hernia in 1917; that the first hernia was caused by childbirth; that her health was good prior to her fall.

Four doctors testified for the plaintiff and one for defendant. On this branch of the case we are leaving out of consideration the medical testimony offered by defendant. The doctors who testified for plaintiff were: Engel, Carrier, Donaldson and A. S. Welch (son of the doctor who first attended the plaintiff). Dr. Engel first examined plaintiff on January 12, 1931. He found a double femoral hernia and advised an operation which was not performed until April 2, 1936; the operation showed good results; he found that plaintiff had a misplaced uterus, also a goiter; she told him that her right knee gave way at times, but he did not treat her for that; he did not think the misplaced uterus was due to plaintiff's fall; he treated plaintiff many times during the years 1931 to 1936, inclusive. Dr. Carrier examined plaintiff on August 15, 1933, and assisted in her operation in 1936; on his first examination he found plaintiff suffering intense pain from the hernias; it was necessary to give her morphine to relieve the pain; after the operation the plaintiff recovered satisfactorily except that she has some tenderness over the area of the incision which condition is permanent; he discovered no evidence of

broken bones in the knee, but did discover the grating condition, and this could have been caused by the fall; plaintiff had a retroverted uterus; this could have been caused by the fall, but he would not say it was; this condition is quite common in women who have borne children; he discovered evidence of an arthritis condition. Dr. Donaldson testified from an examination of X-rays; he found a deformity at the end of the collar bone, indicating a healed fracture; this could have been caused by the fall in which plaintiff's hand struck the rim of the hole; witness discovered a slight arthritic condition; Dr. A. S. Welch examined plaintiff on January 19, 1935; he found a bilateral hernia, a decensus of the generative organs, and a grating sensation in the right knee; that these conditions might be the result of a fall or might be due to other causes; that an operation would correct the hernia.

There was little, if any, substantial evidence which would authorize the jury to find that the misplaced uterus was due to the fall which plaintiff received. The evidence is not very convincing, but possibly sufficient, to authorize the jury to find that the hernia was caused by the fall. The evidence shows that plaintiff would have been spared much suffering had she promptly submitted to an operation for the hernia. We realize that there is no accurate gauge by which to measure the damages, but, after a consideration of all the testimony offered by plaintiff, we conclude the verdict is excessive in the amount of $2000.

It is therefore ordered that, if respondent will within ten days enter a *remittitur* of $2000 as of the date of judgment, the judgment will be affirmed for the sum of $8000; otherwise the judgment will be reversed and the cause remanded.

All concur, except *Hays, P. J.,* absent.