**Murvin JOHNSON, (Plaintiff) Respondent,**

v.

**Fred E. SANDWEG, Sr., (Defendant) Appellant.**

No. 30679.

St. Louis Court of Appeals.

Missouri.

Nov. 21, 1961.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 26, 1961.

Schwartz, James & Sweet, Harry M. James, St. Louis, Joseph Nessenfeld, St. Louis, of counsel, for appellant.

James F. Koester, Joseph J. Fitzhenry, St. Louis, Joseph W. Toeniskoetter, St. Louis, of counsel, for respondent.

GEORGE P. ADAMS, Special Judge.

Plaintiff-respondent recovered judgment against defendant-appellant in the sum of $10,000 in the Circuit Court of the City of

St. Louis, as a result of injuries suffered in a collision between plaintiff's car and defendant's truck, at the intersection of Grand Avenue and Hebert Street in the City of St. Louis.

On this appeal by defendant, he contends, first, that the Court erred in submitting the case to the jury because plaintiff's evidence showed him to be guilty of contributory negligence as a matter of law, and the evidence was insufficient to warrant finding defendant guilty of negligence.

At the intersection of Grand and Hebert, Grand is 80 feet wide and Hebert 36 feet. There are two sets of streetcar tracks in the center of Grand, 5 feet 4 inches apart. The rails of each set of tracks are 4 feet 10 inches apart. At the date of the collision, there was a safety zone of undisclosed length and width immediately north of Hebert and adjacent to the westernmost streetcar rail. At each end of the safety zone, there were pylons about 3 feet high on which poles with blinker lights were attached. There were two lanes of traffic west of the safety zone, the curb lane and another. No cars were parked in the curb lane. There were stop signs regulating traffic on Hebert. Grand was a through street.

Plaintiff was driving a 1958 model Skoda automobile. Its hood was about 3 feet high. Defendant was driving a Ford truck with a stake body. The truck was 16 feet long from bumper to back. Its "body" was 10 feet long and 4 feet high and the "cab" 6 feet long.

Driving south on Grand, plaintiff had stopped two blocks north of Hebert at Natural Bridge, where there were cars both in front of and behind him. After the signal changed, all of the cars drove ahead of plaintiff, and as he approached Hebert, there were no cars behind him and only one car 60 feet in front of him. Plaintiff was driving in the lane next to the curb lane and about 12 feet from the west curb of Grand.

Driving west on Hebert, defendant stopped at the east side of Grand, and after waiting for northbound traffic to pass, proceeded toward the center of Grand where he noticed the car in front of plaintiff, which was then about 25 feet north of defendant. Defendant stopped to permit this car to pass. The right side of his truck was about 8 feet south of the north line of Hebert and his front bumper was over the westernmost streetcar track rail.

When plaintiff was 60 feet from the intersection, he noticed defendant's truck for the first time. He had been unable to see the truck sooner because of traffic in front and toward the side of him. At that point, plaintiff was driving 28 to 30 miles per hour. Upon seeing defendant's truck stopped at the westernmost rail of the car tracks, plaintiff "let up" on the accelerator but did not remove his foot from it or place it on the brake. After seeing defendant's stopped truck, plaintiff looked away momentarily to watch a taxicab which was parked alongside the south curb of Hebert, west of Grand, and also to watch the car in front of him. When plaintiff was 35 feet north of the intersection, and traveling 20 to 23 miles per hour, he again looked toward defendant's truck, at which time the truck had moved forward 8 to 10 feet and was moving "continuously." Without giving any signal to indicate his movement, defendant "shot right out." Because of the pylons, plaintiff could not swerve to the left, back of defendant's truck, so he swerved to the right and tried to stop by putting on his brakes. He skidded and swerved to the right at the same time. The front end of defendant's truck was at the west curb line of Grand when plaintiff hit the back right hand side of the cab with the left front fender of his car. He was traveling 20 to 22 miles per hour when the collision occurred.

Defendant testified that after he stopped on the westernmost rail of the car tracks, and after the car in front of plaintiff passed, he looked up again and saw plaintiff "about five or six car lengths, about 150 feet" from him. He had no judgment of plain-

tiff's speed. Defendant then put his truck in low gear, started forward, shifted into second gear, and attained the maximum speed of 10 miles per hour, but never looked in plaintiff's direction any more. At the time of the collision, defendant was driving 10 miles per hour.

Plaintiff testified that after allowing reaction time, he could have stopped his car in 40 feet at 20 to 22 miles per hour, and that he estimated that by the time he removed his foot from the accelerator and placed it on the brake pedal, his car traveled 30 feet.

Defendant testified that after his "foot was on the clutch" he could stop his truck in 2 feet at 10 miles per hour.

The cause was submitted to the jury on defendant's alleged failure to keep a lookout.

■ Considering "the evidence in the light most favorable to plaintiff" and according him "the benefit of all supporting inferences fairly and reasonably deducible from the evidence" and disregarding defendant's evidence "except insofar as it may aid plaintiff's case," La Plant v. E. I. Du Pont De Nemours & Company, Inc., Mo.App., 346 S.W.2d 231, 234(1), it is readily apparent that the jury could have found that defendant was guilty of actionable negligence in failing to keep a lookout to the north, on Grand Avenue.

While defendant was stopped on the west rail of the car tracks he saw, or in the exercise of the highest degree of care, should have seen plaintiff's car 60 feet north of the intersection, approaching at a speed of 28 to 30 miles per hour. If defendant had watched plaintiff's car but for one half a second, he could have seen the distance reduced to 38 to 40 feet. Instead, without attempting to estimate the speed of plaintiff's car and the decreasing distance between the vehicles as was his duty (James v. Berry, Mo.App., 301 S.W.2d 530, 533(5) ), defendant pulled out into the southbound lane and drove the remaining 32 feet to the

west curb of Grand without ever looking again toward plaintiff's car.

When defendant was stopped, he was 20 feet from the west side of the lane in which plaintiff was traveling. With a truck 16 feet long, it was necessary that he travel 36 feet before he would have cleared plaintiff's lane of traffic. Certainly a diligent lookout would have warned defendant that a collision would likely occur if he proceeded beyond his point of safety on the car track rail.

But even if defendant could be excused for not remaining stopped, when he was 8 feet further into the southbound half of Grand had he looked he could have seen that plaintiff was not going to stop and relinquish the right of way to defendant. Traveling then at 10 miles per hour, he could have reacted to the situation in three fourths a second while traveling 11 feet and could have then stopped in 2 feet and the front end of his truck would only have been 21 feet into the west half of Grand, leaving plaintiff 11 feet in which to pass in front of him.

There was substantial evidence from which the jury found defendant negligent.

Continuing with the principle quoted from the La Plant case, supra, it is equally apparent that plaintiff was not guilty of contributory negligence as a matter of law.

While 60 feet north of the intersection and 68 feet north of defendant's vehicle and on a "through" street, plaintiff saw defendant's stopped truck apparently honoring the right of way to which plaintiff was entitled. He had no reason to anticipate that defendant would suddenly and without warning attempt to appropriate the right of way. In turning his view "momentarily" from such stationary vehicle to observe the vehicle ahead and the taxicab at the corner, and to see if pedestrians or other vehicles at the intersection required action on his part, plaintiff was exercising the care that the law requires of him.

It is paradoxical that defendant complains of plaintiff's action in looking away "momentarily," for in his argument attacking plaintiff's main instruction defendant says: "A motorist cannot keep a lookout in all directions at once, and whether he is negligent in respect to a lookout should be left to the jury to find as a fact and not declared as a matter of law by the Court." That issue was submitted to the jury and was resolved in plaintiff's favor.

When plaintiff first noticed that defendant had abandoned his place of safety, defendant's truck had proceeded 8 feet further into Grand. Plaintiff was at the farthest 43 feet away from defendant's truck. Plaintiff could not swerve to his left and pass behind defendant's truck because of the pylons in the safety zone. He did have 12 feet to his right between the lane in which he was traveling and the west curb of Grand. The accident occurred approximately 6 feet east of the west curb line of Grand. Plaintiff, therefore, traveled 43 feet south and 6 feet west from the point where he was first required to take emergency action because of defendant's vehicle. On the diagonal, it was only 44 feet

Judicially recognized reaction time of three fourths of a second would have taken, at 20 to 23 miles per hour, 22 to 25 feet (or 30 feet for reaction time as plaintiff testified). To such reaction time must be added plaintiff's estimate of 40 feet in which to stop his car, after putting his foot on the brakes. It would have, therefore, taken plaintiff from 62 to 65 to 70 feet to bring his vehicle to a stop. This much distance he did not have.

Defendant's motion for a directed verdict, filed at the close of all the evidence, was properly overruled.

Defendant complains of error in the giving of Instructions 2, 4 and 6 requested by plaintiff.

■ Because reversible error was committed in giving Instruction No. 6, we attend that assignment first. The instruction is, as follows:

"The court instructs the jury that the burden of proving that the plaintiff was contributorily negligent is upon the defendant, and defendant must prove that plaintiff was contributorily negligent by the preponderance or greater weight of the evidence, and unless he has done so your verdict must be in favor of the plaintiff and against the defendant."

This clearly was a misdirection; a direction that defendant was negligent as a matter of law.

Plaintiff makes no serious, or at least no successful attempt to sustain the instruction standing alone. He asserts, however, that the omission of any finding that defendant was negligent was supplied by other instructions.

Plaintiff's main verdict-directing Instruction No. 2 required the jury to find defendant guilty of certain acts of negligence and defendant's burden of proof Instruction No. 3 required plaintiff to prove the charge of negligence against defendant by the greater weight of the credible evidence.

■ While other instructions may be referred to to explain and aid indefiniteness or ambiguity in companion instructions, yet if a verdict-directing instruction "leaves out any facts necessary to be found before the plaintiff is entitled to recover, it is erroneous, and, if such an essential fact is left out, it is not cured by another instruction requiring the finding of such fact. In such a situation, the two instructions would be conflicting." Jenkins v. Missouri State Life Ins. Co., 334 Mo. 941, 69 S.W.2d 666, 669(3); Elmore v. Illinois Terminal Railroad Company, Mo.App., 301 S.W.2d 44, 47(6, 7). They present an "irreconcilable conflict," and it "would be pure speculation for us to attempt to say which instruction the jury followed." Daly v. Schaefer, Mo. App., 331 S.W.2d 150, 157(15).

**810**

Since December 22, 1959, the date of the publication of the Supreme Court's opinion in Moore v. Ready Mixed Concrete Company et al., Mo., 329 S.W.2d 14, the necessity of negativing defendant's submitted defense of contributory negligence has been settled.

For seventy-one years the appellate courts of our state held that a defendant's instruction on contributory negligence cured the error in plaintiff's verdict-directing instruction which failed to negative such contributory negligence. Owens et al., v. Kansas City, St. J. & C. B. R. Co., 95 Mo. 169, 8 S.W. 350, 353(3). Then in the Moore case the Supreme Court recognized that such instructions were not "harmonious or consistent," saying, at (329 S.W.2d loc. cit. 23): "When plaintiff's verdict-directing instruction fails to refer to the defense of contributory negligence, and such defense is submitted in an instruction offered by the defendant, the result is a definite conflict between the two instructions."

If there be such vice in omitting a *defense,* how much more serious is the omission of a finding of the very foundation of the whole lawsuit, *defendant's negligence?*

By Instruction 2, the jury was told that it must find defendant negligent in order to return a verdict for plaintiff. In Instruction 3, it was told that plaintiff must prove defendant negligent by the greater weight of the credible evidence. Then in Instruction 6, it was told that unless defendant proved plaintiff contributorily negligent by the preponderance, or greater weight of the evidence, its verdict must be for plaintiff; that is, if plaintiff was not guilty of contributory negligence he was entitled to a verdict.

As the Supreme Court queried in the Moore case, "Which will the jury follow?" In the jury's attempt to carefully consider and reconcile all of the instructions "it will likely be perplexed and confused as to the proper manner to interpret and attempt to follow the inconsistent directions contained in the two conflicting instructions." (329 S.W.2d loc. cit. 23.)

There is no difference in the principles involved in the Moore case and the instant case. And especially in this case, where the issue of plaintiff's contributory negligence was so vigorously contested that sight of defendant's negligence may very well have been lost by the jury, the error could not possibly be said to be harmless or cured.

We need not consider defendant's contentions that Instructions 2 and 4 were erroneous. On retrial, plaintiff will have the opportunity, if he deems it advisable, to re-examine the instructions and make such changes as may be considered necessary in view of the attack made thereon by defendant.

For error in giving Instruction No. 6, the judgment is reversed and the cause remanded for a new trial.

RUDDY, Acting P. J., and WOLFE, J., concur.