Ruby HART, Plaintiff-Respondent-Appellant,

v.

CITY OF BUTLER, Missouri, a Municipal Corporation, Defendant-Appellant,

and

Fraternal Building Association, a Corporation, Defendant-Respondent.

No. 50844.

Supreme Court of Missouri,

Division No. 1.

Sept. 13, 1965.

E. J. Murphy, Butler, for plaintiff-appellant.

James E. Woodfill, Robert L. Ewing, Ewing, Ewing, Ewing, Carter & Wight, Nevada, for appellant, City of Butler.

John M. Belisle, Harold A. Kyser, Belisle, McNabb & Kyser, Butler, for defendant-respondent Fraternal Bldg. Ass'n.

HENLEY, Judge.

Action for damages for personal injuries against three defendants: City of Butler, Fraternal Building Association and Ben Dyer. The first two named will be hereinafter referred to as the City and the Association, respectively. Judgment in accordance with the verdict of a jury was for plaintiff for $25,000 against the City and the Association, and for the defendant, Ben Dyer. A motion of the City for judgment in accordance with its motion for directed verdict or, in the alternative, for a new trial was overruled and the City appeals. A like motion of the Association was sustained, judgment against the Association was set aside, and judgment entered in its favor. In the alternative, the Association was granted a new trial on the ground that the judgment against it was against the weight of the evidence. Plaintiff appeals from the latter judgment and order.

This court has jurisdiction for the reason the amount involved is in excess of $15,000. § 3, Article V, Constitution of Missouri, V.A.M.S.

The defendants, Fraternal Building Association, a corporation, and Ben Dyer are the owner and lessee, respectively, of the Inn Hotel building in the City of Butler. Plaintiff's petition charged the three defendants with negligence in maintaining a sidewalk alongside the hotel building in a dangerous and defective condition by permitting the walk to be obstructed by an iron pipe or rod extending horizontally across and immediately above an iron grating imbedded in the walk, over which pipe plaintiff allegedly tripped and fell to her injury. The separate answers of defend-

ants were a general denial and a plea of contributory negligence. It is admitted that the walk is a public sidewalk of the city and that plaintiff fell thereon on the date hereinafter mentioned.

On the bright spring afternoon of April 18, 1963, at about 1:30, plaintiff and her friend, Eunice Pyle, were walking home from the downtown area of the City of Butler. Their route took them west along the south side of Chestnut Street on the sidewalk adjoining the north wall of the Inn Hotel. Both had walked over this sidewalk before and knew that iron gratings were imbedded in the walk next to the building. These iron gratings were originally constructed to furnish light and ventilation to the basement and extended out a little over two feet from basement windows and the building wall. The sidewalk, including the grating, was five feet wide. As they walked west on this sidewalk Miss Pyle was on Miss Hart's right and nearest the street. They were talking as they walked abreast, and as they neared the gratings Miss Hart dropped back of her companion to afford more room on the walk. They thus passed the first two gratings but at the third plaintiff tripped and fell receiving an injury to her left shoulder and arm and other injuries which will be discussed later.

Plaintiff identified the object on which she tripped as being an iron rod or pipe extending across and above one of the iron gratings as shown in her exhibit No. 2. This exhibit, a photograph taken with the camera at sidewalk level pointed in the direction the ladies were walking, depicts the object identified by her as the object over which she tripped, its location and position, and the area of her fall better than we can in words, hence we reproduce it:

The iron pipe and the grating are described as being of the same general color, both rusty; the pipe was about three feet long and extended out a little further from the building than the grating. The pipe and its base are described as a standard of the type commonly used as a pedestal for movable "stop" signs. The described diameter of the base is about 27 inches and the pipe about 4 inches. A question asked of a witness implies that the base had utility value as a windbreak for the basement window, but an objection was sustained to that question and this theory was not pursued further; there is no evidence the standard or pedestal was used as a part of the building, or was in any manner attached to the building as a part thereof. How, why, and when it reached this location and position is not shown. Coal for the furnace was put in the basement from this side of the building, but at an opening west of this point. A witness for the city said he removed this pedestal from the roof of the hotel in about 1961 and placed it upright in the parkway between the sidewalk and curb. He indicated it had possibly been used on the roof as part of a radio or television antennae. In March, 1963, this witness saw it sitting in the parkway about thirty feet from the west end of the building.

Charles Thomure of Butler, publisher of the weekly Bates County Shopper, testified he frequently passed this spot enroute to the Post Office to mail his publications and first saw the pipe in the position shown in the photograph in the winter of 1962–63, probably February, 1963. He stumbled over the pipe in February and fell. He saw the pipe in this position several times both before and after his fall, and had never seen it standing upright during that time.

Wayne Hanchey of Butler, testified that he had seen the pipe and base in the position shown in the photograph possibly a half-dozen times beginning in the winter of 1962–63; that the grate, the pipe and

base were a rust color and tended to blend together.

Roy Winegardner, Superintendent of Utilities of the City of Butler, testified he saw this base and pipe standing upright in the parkway after plaintiff's fall.

E. J. Campbell, President of the Association and chairman of its building committee, testified that he saw the pipe and its base in the position shown in the photograph a day or two after he heard of Miss Hart's fall.

Mrs. Roberta Schnobelin worked in the Farm Bureau office located at the northeast corner of the Inn Hotel building. It was to this lady that Miss Pyle rushed for assistance for her companion. Mrs. Schnobelin got her automobile, helped the plaintiff get up from where she had fallen and took the two ladies to Miss Hart's home. Mrs. Schnobelin testified that she had first seen this pipe and its base in the winter of 1962–63; that in the wintertime she usually parked her car on the north side of this building; that she had seen this pipe and base in the position shown in the photograph more than once between that winter and April 18, 1963; that she had also seen it in an upright position sitting on the grating, not in the parkway; that it was in the position shown in the photograph when she assisted the plaintiff after her fall; that it was not attached to the hotel building.

The plaintiff testified that before her fall she saw the pile of dirt shown in the photograph and it distracted her attention somewhat; that she was watching where she was going, but did not see the pipe before she tripped over it.

There was nothing to block or obstruct the view of the sidewalk by the two ladies.

In its first point the City says the court erred in overruling its motions for a directed verdict filed at the close of the plaintiff's case and at the close of the whole case, because: (1) there was no substantial evidence plaintiff stumbled and fell

over the iron pipe as alleged in her petition; therefore, she failed to prove causation; (2) there was no evidence a condition existed at this location not reasonably safe for use by the public and that the City had knowledge of such condition in time to have remedied it; and, (3) the evidence shows plaintiff was guilty of contributory negligence as a matter of law.

Plaintiff alleged, and submitted in her verdict directing instruction, that the pipe described in the evidence was the cause of her fall. Was there substantial evidence that this was the cause? We think so. In determining this question, we review the evidence in the light most favorable to the plaintiff, giving her the benefit of all reasonable inferences to be drawn therefrom and disregard the City's evidence, unless it aids plaintiff's case. Douglas v. Douglas, Mo., 255 S.W.2d 756 [1]. The evidence of causation must be substantial. Tharp v. Monsees, Mo., 327 S.W.2d 889, 893 [1]. A verdict may not be permitted to rest on speculation or guesswork as to negligence or cause. Gregory v. Robinson, Mo., 338 S.W.2d 88, 91 [2]; Davidson v. Hennegin, Mo., 304 S.W.2d 836, 839 [2]. The City argues that the evidence tends to support inconsistent inferences and other possible causes and that there is no direct evidence that this pipe caused plaintiff to fall; that plaintiff has failed to remove the cause of her fall from the realm of speculation and guesswork. It endeavors to support this argument with a reference to her testimony, pointing to her answer to this question: "Do you remember stepping on any grates?" The answer being: "Possibly I did the second one or the one in the middle, the one I fell over." The City also points to a later answer in which she stated, " * * * I probably could have been walking on the sidewalk and possibly could have been partially on the grating." The City contends in this argument that it is just as reasonable to infer that she tripped over the grating or some other defect in the sidewalk. There was no evidence of "other defects" in the sidewalk. A reasonable inference does not follow that the grating may have been the cause of her fall merely because she said she could have been stepping partially on the grating. She said she fell "over" this grate; not that the grate caused her to trip or stumble. The examination of plaintiff at this point makes it clear that when she said she fell "over" this grate she was describing the location of her fall; not the object causing her to trip. We conclude that the testimony of the plaintiff constituted substantial evidence that the cause of her fall was the pipe shown in the photograph. Genova v. Kansas City, Mo.App., 254 S.W.2d 38, 40 [1, 2]; Seigel v. Kroger Grocery & Baking Co., Mo.App., 164 S.W.2d 645; Stratton v. City of Kansas City, Missouri, Mo., 337 S.W.2d 927; Corte v. St. Louis Public Service Co., Mo., 370 S.W.2d 297.

The City contends there was no substantial evidence that a condition existed on this sidewalk that was not reasonably safe. It bases this contention on its theory that since there was no proof that the pipe was the cause of plaintiff's fall, plaintiff has failed to prove a condition existed which was not reasonably safe. We have above, adversely to the City, disposed of the proposition on which it bases this contention. As stated, the evidence is that this pipe was of a diameter of approximately four inches so it extended above the grade of the walk and the grating imbedded therein at least as much as its diameter; the pipe, approximately three feet long, no doubt extended at least a few inches over the concrete portion of the walk for the grating was said to extend only about two feet from the wall. The photograph indicates the pipe extends somewhat over the concrete portion. The evidence is substantial that this pipe partially obstructed the walk. Under this evidence, our view is that whether this condition made this walk not reasonably safe was a question for the jury. Stratton v. City of Kansas City, Missouri, supra, 337 S.W.2d 1. c. 929–930 [2].

"There is no definite rule by which can be determined as a matter of law the length of time that must elapse before a city can be chargeable with notice of the existence of a dangerous obstruction in one of its public * * * [sidewalks]. Each case must be ruled upon its own particular facts." Peterson v. Kansas City, 324 Mo. 454, 23 S.W.2d 1045, 1048 [7]. A reference to the above-recited evidence is sufficient to demonstrate that there was substantial evidence from which the jury could find that the City had constructive notice of the condition created by this pipe in the position described in time to have removed it. Scanlan v. Kansas City, 223 Mo.App. 1203, 19 S.W.2d 522, 525 [6]; Peterson v. Kansas City, supra; Beane v. City of St. Joseph, 215 Mo.App. 554, 256 S.W. 1093, 1094–1095 [1].

We cannot say that the pipe was plainly visible, that plaintiff did not use due care to avoid it, and that she was therefore guilty of contributory negligence as a matter of law; reasonable minds could differ on this issue. The pipe and grating tended to blend together in color, no doubt making it difficult to see. We are inclined to the view, and hold, that under all the evidence the issue of contributory negligence was for determination by the jury. Goldman v. City of Columbia, Mo.App., 211 S.W.2d 541; Grimes v. Standard Oil Co., Mo.App., 370 S.W.2d 627, 632 [7].

In its next point the City contends that the court erred in giving instruction No. 1 offered by plaintiff, because: (1) the instruction did not refer to or negate the defense of contributory negligence submitted in instruction No. 5; (2) the instruction misstates and incorrectly defines the duty of the City, requiring a higher duty of the City than the law requires; and, (3) the instruction "assumes as true that the sidewalk was dangerous and defective and not reasonably safe and that the City maintained the walk in a dangerous and defective condition." Instruction No. 1 is as follows:

"The Court instructs the jury that, while exercising the exclusive right of dominion and control over its public streets, the law made it the nondelegable duty of Defendant City of Butler to exercise ordinary care to keep and maintain the public sidewalk, at the time and place plaintiff allegedly fell, in a reasonably safe condition for the ordinary use of the public in walking on and passing thereover, and failure, if any, on the part of Defendant City of Butler to so exercise such ordinary care would in law constitute negligence.

"If you believe from the evidence that, on April 18, 1963, at the time and place plaintiff fell, if so, such public sidewalk on the south side of Chestnut Street at a point over a grating in said sidewalk referred to in evidence, from any cause whatever, had an iron pipe or rod extending over said grating constituting an obstruction of approximately two inches or more in height above the remaining part of said grating and sidewalk, if you so find, and thereby rendering said sidewalk thereat dangerous and defective and not reasonably safe for the ordinary use of the public in walking thereover at said time and place, if you so find, then, if you find that the dangerous and defective condition of said sidewalk thereat continuously existed for many weeks before plaintiff so fell thereat, if so, and long enough before her alleged fall for Defendant City of Butler, by the use of ordinary care, to have known thereof and, by the use of ordinary care, to have removed and remedied the same before she fell, if so, and thereby have prevented her so falling, if so, and, if you find that Defendant City of Butler failed to use ordinary care in the above respects and that thereby and in maintaining said sidewalk in the aforesaid condition, if so, Defendant City of Butler was negligent, if you so find, and that, if you find on said date, Plaintiff Ruby Hart was walking in a general westerly direction on said sidewalk and was at all times using ordinary care, if you so find, and that, when she reached said raised pipe or rod, if any, above described, her foot struck the same and she then and there stumbled over said pipe and was thereby caused to fall and

was thereby injured, if you so find, as a direct result of the negligence of defendant, if you so find, then, your verdict must be for Plaintiff Ruby Hart and against Defendant City of Butler."

One contributory negligence instruction, No. 5, was given on behalf of all defendants. We note that instruction No. 1, in the bottom one-third of its second paragraph, requires a finding that "Plaintiff * * * was walking in a general westerly direction on said sidewalk and *was at all times using ordinary care*, * * *." (Emphasis ours.) The City recognizes the emphasized words but says they assume ordinary care and therefore did not negate contributory negligence. It cites Edwards v. Mellen, Mo., 366 S.W.2d 317 in support of that contention. In Edwards, plaintiff's verdict directing instruction, in an attempt to comply with Moore v. Ready Mixed Concrete Company, Mo., 329 S.W.2d 14, referred to the defense of contributory negligence in these words: " * * * that plaintiff, *while* exercising ordinary care for her own safety, * * *." (Emphasis ours.) This court held that "the phrase 'while exercising ordinary care for her own safety,' set off as it is by commas, assumes ordinary care * * * and does not negative contributory negligence." The verdict directing instruction in our case, unlike that in Edwards, does not use the word "while" in referring to the use of ordinary care; this instruction requires a finding that plaintiff was using ordinary care, and does not assume ordinary care. The Edwards case is not applicable. In Taylor v. Hitt, Mo.App., 342 S.W.2d 489, 498, the St. Louis Court of Appeals held that the words in plaintiff's verdict directing instruction requiring the jury to find " * * * that at all times shown to you in the evidence plaintiff exercised ordinary care;" sufficiently complied with the rule stated in Moore v. Ready Mixed Concrete Co., supra. This court held in Swinger v. Bell, Mo., 373 S.W.2d 30, that a plaintiff's instruction prefacing its hypothesis of a defendant's liability upon a finding "that the plaintiff was exercising or-

dinary care for his own safety" is a sufficient negation of contributory negligence to meet the requirements of the rule announced in Moore, supra, absent some complicating factor such as that referred to in Edwards v. Mellen, supra. Also see: Martin v. Kansas City, Mo., 340 S.W.2d 645, 649 [4]; Schneider v. Southwestern Bell Telephone Co., Mo.App., 354 S.W.2d 315, 319.

The City contends that "a general statement that plaintiff was using ordinary care, should never be sufficient"; that plaintiff's reference to the contributory negligence instruction should be by instruction number or by the use of the same terminology as is used in the contributory negligence instruction; but, its chief complaint is as to the location or position of the negating clause in the verdict directing instruction. It supports this contention and complaint with no authority and we find none that would be applicable prior to the effective date of M.A.I. See M.A.I. No. 22.04, and illustrations Nos. 31.01, et seq.

We hold that instruction No. 1 negated the defense of contributory negligence and that the two instructions did not conflict.

The City says, in arguing the above points, that we should also examine plaintiff's instruction No. 3 to determine whether the negation of contributory negligence in instruction No. 1 is sufficient. It calls No. 3 a "concurring negligence" instruction. We see no need to set out No. 3 verbatim. The instruction has no bearing on whether No. 1 adequately negated contributory negligence. The City then proceeds to contend and argue that No. 3 is erroneous in that it fails to negate contributory negligence. This contention was not raised in its after-trial motion and is not preserved for review.

The City contends that the first paragraph of instruction No. 1 incorrectly defines and enlarges the duty of the City because, it says, its duty to exercise due care to maintain its sidewalks in a reasonably

safe condition applies only to those persons using its walks who are themselves exercising due care; that the instruction's definition of the City's duty should have included the condition that its duty is applicable only to those exercising ordinary care for their own safety; that the instruction therefore contains a misstatement of the law and requires a higher duty of the City than the law imposes.

■ The City is not an insurer of the safety of those who use its sidewalks and "* * * the city's duty to maintain its * * * [sidewalks], 'reasonably safe' does not mean that the * * * [walks] 'must be safe' but that they can be used by a person in the exercise of ordinary care and 'whilst they are not absolutely safe, yet the pedestrian can use them with safety to himself, if he uses ordinary and usual care for his own safety.'" Guy v. Kansas City, Mo., 257 S.W.2d 665, 667; Taylor v. Kansas City, 342 Mo. 109, 112 S.W.2d 562, 564. Essentially the same contention was made in objections to similar instructions in Pohl v. Kansas City, Mo., 238 S.W.2d 405, 406, and Hunt v. Kansas City, 345 Mo. 108, 131 S.W.2d 514, 515, although the objections there were not pointed directly and specifically at the definition portion of the instruction. The court denied the contention in those cases. As an abstract statement of law the first paragraph of instruction No. 1 correctly defines the duty of the City in maintaining its sidewalks, and no more need be stated in the definition portion of the instruction although the law requires of those using its sidewalks the duty of exercising due care. That paragraph purported to define the duty of the city only; not that of those using the sidewalks and it was not required to define in this paragraph their duty as a qualification or limitation of the definition of the City's duty. The instruction adequately submitted the duty of plaintiff in requiring the jury to find she "was at all times using ordinary care." To determine the meaning of an instruction its entirety must be considered, not just isolated paragraphs, words or phrases, and we hold

that this instruction, considered in its entirety, did not enlarge or impose a higher duty upon the City than the law requires. Pohl v. Kansas City, supra. The City contends that the jury might well infer "that the City must use ordinary care to see that the sidewalk was absolutely safe, regardless of the manner in which the traveler used it * * *." No jury of ordinarily intelligent men, reading the instruction as a whole, could so infer.

■ The City's next assault upon instruction No. 1 is that it assumes as true that the sidewalk was dangerous and defective and not reasonably safe, and assumes that the City maintained the walk in a dangerous and defective condition. It points to and challenges these words as making such assumptions: "thereby rendering said sidewalk thereat dangerous and defective and not reasonably safe" and "that thereby and in maintaining said sidewalk in the aforesaid condition." We do not agree that the instruction assumes these matters to be true. The paragraph in which these phrases appear requires the jury to *believe and find* that the iron pipe constituted an obstruction rendering the sidewalk dangerous and defective and not reasonably safe. It also requires a *finding* that the City failed to exercise ordinary care in maintaining the sidewalk and was thereby negligent. In its argument the City has removed the quoted words from the sense of that which precedes and follows them; in doing so it refuses to recognize and consider the meaning of the instruction as a whole. The rule is: "The meaning of an instruction must be determined from its entirety and not by considering only isolated words or phrases." Pohl v. Kansas City, supra.

■ The City also argues that this instruction did not require the jury to find that the City had constructive knowledge that the sidewalk was not in a reasonably safe condition; that it required only that the jury find that the City have knowledge that the walk was dangerous and defective. The alleged dangerous and defective condi-

tion is, of course, that which could render the walk not reasonably safe. The instruction, read as a whole, would not permit the jury to predicate its finding on knowledge by the City of a dangerous and defective condition only, but required that the jury find that the City had knowledge of a dangerous and defective condition which the jury had also been required to find rendered it not reasonably safe.

The next assignment is that instruction No. 3, given at the request of plaintiff, assumes the negligence of the City and fails to negative the defense of contributory negligence. The instruction tells the jury that if they find that the negligence, if any, of each of the three defendants, no matter how great, directly concurred, etc., to cause plaintiff's injury then it would be their duty to return a verdict against all defendants, etc. We do not set out the instruction in full for there is no particular need to do so. The instruction is, in substance, identical with the first paragraph of the instruction in Rothweiler v. St. Louis Public Service Company, Mo., 234 S.W.2d 552, 554–555, but it does not contain the second paragraph of the Rothweiler instruction for which that instruction was held erroneous. In referring to the first paragraph of the Rothweiler instruction the court said that no useful or fair purpose is served by the references to the negligence of each of defendants "no matter how great" for negligence is not affected by relative degrees of care as between defendants. We continue to agree with those comments on the first paragraph of the Rothweiler instruction. We do not agree, however, that instruction No. 3, when read with the other instructions, assumes any negligence on the part of the City. Ketcham v. Thomas, Mo., 283 S.W. 2d 642, 648 [9]. The instruction begins by submitting that the jury may apply its principles only if negligence exists.

■ As to the City's contention that instruction No. 3 fails to negative contributory negligence, we note that this objection was not assigned as error in its after-trial motion. Hence, the point is not preserved for review. Tacitly conceding this, the City takes the position in its reply brief that the giving of this instruction was plain error within the meaning of Civil Rule 79.04, V.A.M.R. and asks that we so consider it. We do not agree that the instruction is erroneous under the circumstances of this case for the reasons advanced by the City or for any other reason, and we decline to invoke the plain error rule.

■ The City's next point is that instruction No. 6 is erroneous "as directing a verdict for plaintiff without requiring a finding of defendant's negligence." This was plaintiff's burden of proof instruction on the issue of contributory negligence. The complaint of the City is that the jury might well have concluded from this instruction that the plaintiff should have a verdict regardless of whether defendants were negligent, if the defendants had not proved contributory negligence; that the instruction was, in effect, a direction that defendants were negligent as a matter of law. This was essentially the same attack made upon a so-called burden of proof instruction in Johnson v. Sandweg, Mo.App., 351 S.W.2d 806, 809 [2], cited by the City. In Johnson the instruction told the jury that *"your verdict* must be in favor of plaintiff" if defendant had not proved plaintiff contributorily negligent by the preponderance, etc., of the evidence. (Emphasis ours.) In our case the objected to instruction tells the jury *"Your finding on this issue* [contributory negligence] must be in favor of plaintiff" if defendant has failed to prove plaintiff contributorily negligent by the preponderance, etc., of the evidence. (Emphasis ours.) This instruction was simply a burden of proof instruction on the issue of contributory negligence, and no more. The court did not err in giving instruction No. 6.

In its next point the City attacks instruction No. 7 as incorrectly defining the City's duty and as assuming the City had failed to perform its duty. This instruction, offered by plaintiff and given in connection

with defendants' contributory negligence instruction, defines the City's duty in essentially the same terms as the first paragraph of instruction No. 1. The City states in its brief that it advances the same argument and authorities against the definition of the duty of the City in No. 7 as it does against No. 1. We find that it also advances the same argument and authorities on its point that No. 7 assumes the City failed to perform its duties as it does on the same point made against No. 1. We have ruled on these points in discussing instruction No. 1, holding that the Court did not err. We see no good reason to lengthen further this opinion by again discussing the same matters. The point is ruled against the City. A similar instruction was approved in Elmore v. Kansas City, Mo.App., 333 S.W.2d 795, 796. Essentially the same attack was made against that instruction.

■ We turn next to the City's contention that the verdict is excessive, so excessive that a substantial remittitur should be ordered, and that the trial court erred in refusing to order such remittitur. We review the evidence of her injuries in the light most favorable to plaintiff. Parlow v. Carson-Union-May-Stern Co., Mo., 310 S.W.2d 877, 884 [10].

Plaintiff is single and was 68 years of age at the time of the trial in March, 1964. She has earned her living for the most of her adult life by giving piano lessons in her home in Butler where she resides with her sister. A brief examination at the doctor's office immediately after her fall revealed an injury to her left shoulder for which she was hospitalized the same day. She also received an abrasion on her face "with a fair amount of swelling" and an injury to her left knee "with a considerable amount of swelling." An X-ray of the knee revealed no fracture, only old arthritic changes aggravated by soft tissue injury. Examinations at the hospital with the aid of X-ray revealed a "severely comminuted fracture" of the left humerus. There was a fracture at and through the surgical neck of the humerus with dislocation of its head from a part of the shoulder blade, the top part of the bone being broken from its shaft "and pushed down and back." The major fragments overrode one another. Associated with the fracture at the surgical neck was a fracture of the greater tuberosity.

Her attending physician, Dr. Masor, determined that proper repair of the fracture would require an open reduction at the fracture site and he called in an orthopedic surgeon, a Dr. Piper of Kansas City. This procedure was carried out under a general anaesthetic, the fracture reduced, the major fragments being stabilized by the use of intramedullary pins driven into the bone and held in place by metal bars and screws extending into the medullary cavity.

Miss Hart was hospitalized 28 days. About 10 days after her return home she resumed giving piano lessons, carrying her arm in a sling. She so carried the arm approximately eight weeks. Her income from teaching before and after her fall was about the same, roughly $60 or $65 per week. She was unable to demonstrate to her students left hand movements on the piano. She has difficulty trying to play the piano for her own pleasure for, she says, she must move her whole body since that arm is without sufficient strength to reach the bass keys. Too, she says movement of the fourth finger of her left hand is not predictable, whereas before she had "a good left hand", her implication being that a good left hand is a desirable accomplishment in her profession. She says: In a supine position she can move her hand and arm up only with aid from her right hand; that she can reach her right shoulder but cannot reach the back of her neck or use this arm to fasten a dress or brassiere and gets into a girdle only with difficulty; that she touches the top of her head with difficulty but cannot use this arm to comb or wash her hair; that these movements are accompanied with severe pain; that she dare not put all of her weight on her weak left knee, and walks with a cane except around her home; that

she now has saliva that drops from her mouth, a condition repellent to her.

Dr. Masor confirmed the results of his examination at his office and the hospital and the treatment related above, and further testified that plaintiff's injury to her shoulder and arm is permanent; that arthritis at this point has undoubtedly developed from the trauma; that she will continue to have pain and discomfort; that he has not submitted a bill for he has not discharged her; that his bill now is about $400; that Dr. Piper has not sent a bill for his services. Her hospital bill was a little over $500.

Dr. Ronald Douglas of Butler testified that he examined plaintiff in October, 1963, at the request of defendants. Her complaints then were pain and restriction of motion in the left shoulder, a "tingling" sensation in the 4th and 5th fingers of the left hand, and that her left knee was weak and not dependable. His examination was limited primarily to the left shoulder. He found no restriction of motion or difficulty in the fingers nor any stiffness or pain in the knee. He said her left knee was larger than the right, and that this was due to a previous injury. He found atrophy of the deltoid muscle; a very definite restriction of motion in her left shoulder; that she was unable to raise her arm above her head, abduction being 75% of normal and rotation of upper arm about 10 degrees whereas 90 degrees is normal. His opinion was that the disability attributable to the knee was minimal; that the injury to the shoulder was permanent; that development of arthritis in the shoulder is to be anticipated; and, that she will have continued pain and discomfort in her shoulder the rest of her life. He rated the functional disability of her shoulder at 50%; and, considering her occupation, he rated the disability of her body as a whole at 30%.

The City, in argument, contends that "While the injury to her shoulder cannot be described as being minor, we take the position that considering her age, the relatively small amount of special damages, the fact she does not have a diminished earning capacity, the fact that she is unmarried and has no one dependent upon her for support and the fact that there is no evidence her ability to perform household duties has been impaired, the verdict is excessive and a remittitur should be ordered."

▮ " * * * Although an appellate court properly may determine, as a matter of law, whether the verdict under review is in excess of the maximum amount which the evidence in the case would support * * *, the assessment of damages is peculiarly and primarily the function of the jury, whose duty it is to award such sum as reasonably will compensate plaintiff * * * and, the appellate power to interfere with and reduce a verdict is exercised with caution * * * and only where the amount of the verdict is manifestly unjust. * * * In determining whether a verdict is excessive, we do not weigh the evidence * * * but consider it in the light most favorable to plaintiff and the verdict, disregarding defendants' contradictory or unfavorable evidence. * * *.

"Obviously, the maximum award permissible under the evidence in a given case is not susceptible of determination by precise formula or with mathematical nicety; and, since no two cases are exactly alike, each must be ruled on its own particular facts. * * * 'Consideration is given to the nature and extent of the injuries and disabilities, diminished earning capacity, changing economic factors and the compensation awarded and approved in cases of similar or fairly comparable injuries' * * * ; and due regard is accorded to the significant decline in the purchasing power of the dollar, to the rule of reasonable uniformity of awards for similar injuries, to the fact that the jury and the trial court had adequate opportunity to make a personal appraisement of plaintiff's true condition and thus were in better position than the appellate court to measure an award of reasonable compensation, and to approval of the verdict by the trial court upon motion for

new trial. * * *." Turner v. Yellow Cab Company of Springfield, Mo.App., 361 S.W. 2d 149, 157–158.

It is always troublesome to determine whether a verdict is excessive for the pertinent facts are never the same. Of the cases cited by plaintiff and the City where the injuries are comparable none are of more recent vintage than the year 1957. We have read all of them and searched for others and more recent comparable cases, but found none. In Hanson v. Tucker, Mo., 303 S.W.2d 126, cited by the City, the court held a $15,000 verdict not excessive where a 62-year-old female received fractures of the left collar bone and two ribs. She had worked at altering clothing but could not go back to sewing; she was improving at time of trial and was able to cook and wash dishes at home; there was no showing of loss of earnings or the cost of medical treatment although the court, from evidence of the extent of her medical treatment, observed that "nevertheless her special damages would appear to be substantial." In Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468, cited by the City, the court held a $13,000 verdict not excessive. There a 54-year-old housewife, active in her church and an accomplished pianist who played the piano for her Sunday School class and on other occasions, received a fracture of the tubercle of the right humerus in which a fragment was detached from the shaft, a tear in the joint capsule and a complete subglenoid dislocation of that shoulder. At the time of trial she could do only light housework and could cook a little, using her left hand; the injury was painful, permanent and progressive; there was no loss of income or other special damages shown; her disability was estimated at 50% to 75% of the normal use of her arm and hand. In Hamilton v. Ross, Mo., 304 S.W. 2d 812, cited by plaintiff, the court held a $20,000 verdict not excessive. There a 70-year-old male restaurant operator received a fracture of the right wrist with some deformity in healing, and comminuted fractures of the left elbow requiring open re-

duction with resultant traumatic arthritis and deformity of the joint, all permanent. He was hospitalized 13 days; his hospital and medical expenses were $1,300 and he paid out $2,500 for cooks and a waitress due to the accident; there was no proof of specific loss of earnings or impairment of earning capacity. He had an overall limitation of motion of his left arm of 60% of normal and limitation of motion in his right arm and both hands. At the time of trial he, with the help of his wife, was earning $300 per month, but there was no showing as to his pre-accident earnings.

As stated, plaintiff's hospital bill was $500. At the time of trial Dr. Masor's bill was approximately $400, but what his final bill would be for her treatment for these injuries was unknown for she was still under his care. The orthopedist's bill was unknown. Considering plaintiff's age, the nature and extent of her injuries and disabilities as compared with those in the three last-above cited cases, some decline in the value of the dollar since those cases, the limitations on her ability to instruct her students and the probable natural result thereof, her pain and suffering, her known hospital and medical bills and those reasonably to be anticipated; and, considering the principle that the award comply with reasonable standards of uniformity, we are of the opinion that the judgment is excessive in the amount of $5,000.

We now reach the City's final point, the one point upon which the plaintiff and the City agree: that the court erred in setting aside plaintiff's verdict and judgment against the Association. The plaintiff contends on its appeal from the judgment for the Association that the latter, as the abutting property owner, owed a duty to the general public to keep this sidewalk free of obstructions originating from its premises; that the Association also owed the duty to maintain the grating in a reasonably safe condition; and, that those duties were breached by permitting the iron pipe to lie across this grating after it had notice of its

presence. This is essentially the position of the City too.

The well-established general rule announced and followed by this court is that the duty and obligation to keep and maintain its public sidewalks in a reasonably safe condition for use by pedestrians rests upon the municipality, and if, for any reason, the condition of a sidewalk is rendered dangerous by defect or obstruction, the municipality, where it has notice of such condition in time to remedy it, is liable to any person for injury caused by such condition. This duty and obligation is not upon the abutting property owner, nor is there actionable liability on its part in favor of one injured as a result of such condition. Callaway v. Newman Mercantile Co., 321 Mo. 766, 12 S.W.2d 491, 496 [1], 62 A.L.R. 1056; Breen v. Johnson Bros. Drug Co., 297 Mo. 176, 248 S.W. 970, 972 [1]; Russell v. Sincoe Realty Co., 293 Mo. 428, 240 S.W. 147.

An equally well-established exception to this rule is that the abutting landowner will be liable for injuries to those using the public sidewalks " * * * where, by his affirmative act, he creates a dangerous condition, as where he uses the sidewalk for his own private benefit or convenience and fails to exercise reasonable care to prevent injury to persons lawfully using the way, or where he creates or maintains a nuisance." Callaway v. Newman Mercantile Co., supra, 12 S.W.2d l. c. 494; State ex rel. Shell Petroleum Corporation v. Hostetter et al., 348 Mo. 841, 156 S.W.2d 673, 675 [2]; Fadem v. City of St. Louis et al., Mo. App., 99 S.W.2d 511, 514 [4]. Discussing the general rule and this exception in Martin v. Gilmore, Mo.App., 358 S.W.2d 462, 464 [1] and the application of the exception to the facts of that case the Kansas City Court of Appeals said: "That rule * * * yields to the qualifying principle that an abutting property owner who makes a special use of the sidewalk is under a duty to exercise reasonable care to maintain that

part put to his special use in a reasonably safe condition for use by the public." Particularly applicable to the facts of that case was this statement quoted by the court with approval from 63 C.J.S. Municipal Corporations § 861, p. 227: " * * * the special use carries with it the duty not to permit the use to create conditions unsafe for the passing thereon of pedestrians * * *."

What was the dangerous condition on the walk that caused plaintiff to trip or stumble and fall? Was it the grating constructed as a part of the walk for the Association's benefit to afford light and air to the basement of its building? Or, was it the iron pipe extending across the grating as an obstruction, and not the condition of the grating itself? If it was the grating, or a condition created by it or the Association's use of the walk, then the exception to the rule would be applicable. The basic theory of plaintiff's case against both the City and the Association was that the dangerous condition causing the walk not to be reasonably safe was the iron pipe as an obstruction on the walk; this was the theory of her pleading, her proof and the instructions offered by her and given by the court. The Association is to be held liable to this plaintiff only upon proof that the condition causing her injuries was created by its own affirmative act. Callaway v. Newman Mercantile Co., supra; Fadem v. City of St. Louis, supra. The record is silent as to how this pipe reached the position described in the photograph; there is no evidence that anyone representing the Association placed it upright or horizontal on the grating; the record is devoid of any proof that the condition causing plaintiff's injuries was created by the Association's affirmative act. As an object foreign to and not a part of either the building or the grating, it was the duty of the City to see that the pipe and its base, like any other similar object, did not become a dangerous obstruction to any part of the sidewalk including the grating as a part of the walk; this duty did not rest upon the Association.

Plaintiff takes the position that the Association had the duty to keep this sidewalk free of obstructions originating from its own premises. She cites Sutton v. Fox Missouri Theatre Company, Mo., 336 S.W.2d 85, 93 [8], where this court said: " * * * as a general rule an abutting property owner is under no obligation to keep an adjacent sidewalk free of defects and obstructions originating from sources other than its own premises." Plaintiff says that the converse of the above quotation is applicable here and that since the pipe over which she tripped and fell came from the roof of the Association's building the latter is to be held liable for her injuries. As stated, the pedestal was removed from the roof of the Association's building and placed in the parkway between the sidewalk and street approximately two years before plaintiff's injury. In the interim this object was seen both upright and horizontal at different locations in the area; no one appeared to be entitled to credit or responsibility for its movements. It obviously had no value to the building and certainly was not a part of it. So far as the record discloses, from the time it was first located in the parkway, it was treated like a wandering alley cat: it was without a home or anyone to be concerned about where it was or what happened to it, for apparently it no longer had any utility value. Merely because two years before it was removed from or "originated" on the roof of the building does not impose liability on the Association. It is liable only if, by its willful act or negligent omission, it caused the pipe to create a dangerous obstruction on the sidewalk.

Plaintiff and the City contend that the Association's obligation to maintain the grating in a reasonably safe condition included the duty to keep it free of objects, such as this pipe, and not permit such objects to rest on top of the grating as an obstruction; that "the maintenance of the grates would mean not only the repair of the grates to see [that] they were not defective, but also would include the freeing them of obstructions created by their use."

We have stated that the duty to maintain a public sidewalk free of obstructions not reasonably safe to pedestrians rests upon the municipality. This includes the duty to maintain gratings, as a part of a walk, free of obstructions, unless the grating, as a benefit or convenience to the abutting owner, by its use creates the obstruction or other condition not reasonably safe to pedestrians, or unless the abutting owner by his affirmative act or negligent omission creates, or causes its use to create, a dangerous condition. Neither this grating, its condition, nor its use by the abutting owner created the obstruction causing plaintiff's injury. For this and other reasons above stated, we hold that the trial court did not err in setting aside the verdict and judgment against the Association. We have read and analyzed other cases cited by the plaintiff not referred to in this opinion and do not consider them applicable.

In view of the above holding it will not be necessary to consider other points raised relating to granting the Association a new trial.

If plaintiff will, within fifteen days, enter a remittitur of $5,000 of its judgment against the City that judgment will stand affirmed for $20,000 as of the date of its original entry with interest thereon from that date; otherwise, that judgment is reversed and the cause against the City remanded. The judgment in favor of the Association and against the plaintiff is affirmed.

HYDE, P. J., and HOLMAN, J., concur.

DONNELLY, J., not participating because not a member of the Court when the cause was submitted.