Betty Lou RAUH, Plaintiff-Respondent,

v.

INTERCO, INC., Defendant-Appellant.

No. 48757.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 19, 1985.

Motion for Rehearing and/or Transfer
Denied Dec. 23, 1985.

---

Mark Michael Anson, Robert F. Wiegert, St. Louis, for defendant-appellant.

Thomas J. Casey, St. Louis, for plaintiff-respondent.

KELLY, Judge.

Defendant Interco, Inc., a Missouri Corporation, appeals from an order of the Circuit Court of the City of St. Louis "overruling its motion for new trial, judgment N.O.V., or other post-trial relief" in a jury-tried case wherein the plaintiff, Betty Lou Rauh, obtained a judgment in the amount of $105,000.00. Interco, as appellant shall hereinafter be identified, contends on ap-

peal, inter alia, that (1) the trial court erred in denying its motions for post-trial relief in that based on the facts in evidence Ms. Rauh was not entitled to recover a judgment against it as a matter of law; (2) instructional error, and (3) in the admission and exclusion of certain evidence. Because we hold that the evidence viewed most favorably in support of the judgment did not, as a matter of law, make a submissible case, we do not reach the other contentions.

Prior to considering the evidence and whether a submissible case was made we must dispose of a jurisdictional issue raised by Ms. Rauh in her brief. Interco's Notice of Appeal states that this appeal is from the order of the trial court overruling its post-trial motion for judgment in accordance with its motion for a directed verdict, or, in the alternative, for either a new trial, judgment notwithstanding the verdict, or other post-trial relief.

Ms. Rauh contends that this appeal must be dismissed because Interco is appealing from a post-trial order which is non-appealable. A Notice of Appeal seeking the review of such an order has been held to be ineffectual to bring anything before the appellate court. In support of this proposition Ms. Rauh relies on *Pittman v. Reynolds*, 679 S.W.2d 892, 893[1, 2] (Mo.App. 1984); *Haywood v. Haywood*, 527 S.W.2d 36, 37[1, 2, 3] (Mo.App.1975); *Cady v. Kansas City Southern Ry. Co.*, 512 S.W.2d 882, 884[2, 3, 4] (Mo.App.1974).

These cases cited by Ms. Rauh posed situations in which the appellant's attempt to appeal from orders on post-trial motions instead of the underlying judgment were accompanied by a number of other procedural errors. *Pittman, supra,* at p. 893 stated:

We are aware that inadequacy in the content of the notice of appeal has frequently been waived by the appellate courts of this state where the interests of justice were perceived by the court to warrant consideration of the merits of the appeal as briefed and argued. (cites omitted) The doctrine of leniency, however has apparently been extended ex

gratia and without discernible uniformity. (cites ommitted) Where violation of the appeal requirements of Rule 81.08(a) has not resulted in dismissal of the appeal, the decisions at least recite a good faith attempt by the appellant to present issues which are both cognizable by the appellate court and discernible from the briefs and the record.

■ The Western District of this court has pointed out in *Mullen v. Renner,* 685 S.W.2d 212, 214[1] (Mo.App.1985) that an attempt to appeal from a non-appealable post-judgment order may or may not be a basis for dismissal of the appeal, depending on perception by the appellate court of the interests of justice, the inadvertence of the mistake and the presence or the absence of a good faith attempt to present an issue cognizable for appeal and discernible from the briefs and record.

■ We conclude that this appeal, where the question whether the plaintiff made a submissible case for the jury is raised, briefed, and argued is one in which the interests of justice requires that we exercise the "doctrine of leniency" referred to in *Pittman* and afford Interco review.

■ Having decided to consider whether Ms. Rauh made a submissible case against Interco and whether the trial court erred in overruling Interco's motion for directed verdict at the close of all of the evidence, the appellate court reviews the evidence from a viewpoint most favorable to the plaintiff and gives the plaintiff the benefit of every reasonable inference which the evidence tends to support and disregards the defendant's evidence which does not support the plaintiff's case. *Hansome v. Northwestern Cooperage Co.,* 679 S.W.2d 273, 274[1] (Mo. banc 1984).

Viewed in this light, the evidence was that the plaintiff, Betty Lou Rauh fell on the public sidewalk in front of the Globe-Democrat Building at 710 North Tucker Boulevard in the City of St. Louis on November 16, 1979. The defendant, Interco, was the owner of the building. Ms. Rauh had been employed by Color Press for thir-

ty years and for the past ten years Color Press had been located in the building.

The Globe-Democrat Building occupies the entire block on North Tucker Boulevard on the east side of the street. The main entrance to the building is in the middle of the block and there is a concrete public sidewalk approximately ten feet wide along Tucker Boulevard in front of the building. Three to four hundred people use the front entrance daily. Ms. Rauh normally uses this entrance.

On the day of the occurrence Ms. Rauh had been at work and left the building to go to a restaurant across Tucker Boulevard for a lunch break. After lunch she crossed Tucker Boulevard on her way back to the building. There were twenty to thirty people standing on the public sidewalk in front of the main entrance to the building. People were also standing right at the edge of the curb. Ms. Rauh was watching and trying to avoid the people on the public sidewalk as she approached the curb on the east side of Tucker Boulevard in order to make her way into the building. When Ms. Rauh took her first step onto the public sidewalk from the street she tripped and fell forward onto her hands and knees.

Extensive evidence was presented at trial by both sides relative to the nature and extent of the injuries sustained by Ms. Rauh as a result of her fall. However, because of the decision we reach on the question whether she made a submissible case it would serve no purpose to detail them. The jury concluded that she sustained serious and permanent injuries as evidenced by the size of the damages it awarded her.

The area on the sidewalk where Ms. Rauh fell was conceded by the parties to be cracked and in disrepair for a number of years prior to the occurrence. Testimony at trial showed that the condition of the sidewalk was a regular topic of conversation at Ms. Rauh's place of employment. Although photographs of the broken public sidewalk were admitted into evidence at trial it was stipulated that these photographs were not taken in 1979, near the

time of the occurrence, but rather several years later in preparation for depositions. In any event, the record in the trial court is insufficient to establish the exact extent of the deterioration or the size and dimensions of the cracked area where Ms. Rauh tripped and fell. All that can be gleaned from the record is that at the point where Ms. Rauh fell the area had previously been patched with asphalt material which over time had crumbled and cracked, leaving a hole in the public sidewalk.

Interco's employees had patched the area where Ms. Rauh fell with asphalt approximately three years prior to the occurrence. While similar repairs had been made by Interco in the summer of 1979 they were mostly limited to the patching of the public sidewalk's expansion joints. Interco did not undertake to do any further patching or maintenance beyond its original repairs to this area of the public sidewalk.

As we have noted hereinabove, Ms. Rauh was well aware of the public sidewalk's condition. Although the day of the occurrence was chilly, the sun was shining, so that weather conditions were not a factor contributing to Ms. Rauh's fall. There was also a lack of any obstructions which might have blocked Ms. Rauh's way to the main entrance to the building. The only thing in Ms. Rauh's way as she crossed the street were the people standing on the public sidewalk. She admitted that in trying to avoid these people she had failed to look down at the surface of the public sidewalk.

The jury returned a verdict for Ms. Rauh in the amount of $175,000.00, but assessed fault to her of 40%, thereby reducing the award to $105,000.00.

Interco contends on appeal that the trial court erred in overruling its motions for post-trial relief and in allowing the case to be submitted to the jury. It argues that under the evidence it cannot be held liable for the condition of the sidewalk as a matter of law. We agree.

■ The parties are in agreement that the general rule in Missouri is that the affirmative duty to maintain public side-

walks rests on the municipality. *Word v. City of St. Louis,* 617 S.W.2d 479, 480 n. 1 [1, 2, 3] (Mo.App.1981). Both parties also recognize that there are two standard exceptions to this rule. One is termed the "special use exception." This exception applies when an abutting property owner has made use of the public sidewalk for some other purpose than merely using them as a public sidewalk, such as a driveway, or where the abutting owner puts an obstruction on the public sidewalk which was not a part of the public sidewalk as originally constructed in order to serve his own purposes. *Stein v. Mansion House Center,* 647 S.W.2d 918, 919[2] (Mo.App.1983); *Wright v. Hines,* 235 S.W. 831, 833 (Mo. App.1922).

■ The facts of this case make the "special use exception" inapplicable.

The second exception to the general rule, is that an abutting property owner may be held liable if he artificially created, through negligence or affirmative action, a condition which makes passage unsafe. *Stein v. Mansion House Center, supra; Berry v. Emery, Bird, Thayer Dry Goods Co.,* 357 Mo. 808, 211 S.W.2d 35, 40[1] (1948); *Hungate v. United States,* 626 F.2d 60, 62[3] (8th Cir.1980).

■ The issue then becomes whether Interco's affirmative act of repairing the public sidewalk with asphalt created a dangerous condition that in turn caused Ms. Rauh's injuries. In addressing this issue we must keep in mind that the law does not require an abutting property owner to repair or maintain a public sidewalk. *Wright v. Hines,* 235 S.W. 831, 833[4] (Mo.App. 1922); *Hart v. City of Butler,* 393 S.W.2d 568, 582[26] (Mo.1965). It is also well settled that this rule still applies irrespective of whether repairs have previously been undertaken. *Callaway v. Newman Mercantile Co.,* 321 Mo. 766, 12 S.W.2d 491, 494[1] (1928); *Smith v. St. Louis-San Francisco Ry. Co.,* 275 S.W. 53, 55[3] (Mo. App.1925).

*Smith, supra,* involved a case where the plaintiff fell off a footbridge which was located on a public thoroughfare to which the defendant was an abutting property owner. Since the footbridge was frequently used by individuals going to and from defendant's railroad station the defendant undertook the repair of the footbridge on several occasions. Eight to ten years prior to the occurrence defendant had even rebuilt the footbridge and within approximately two years prior to the occurrence had also made some repairs to the footbridge.

Despite the repairs made by the defendant, the footbridge had become uneven due to rotting chunks of wood upon which the footbridge rested. Defendant's workmen did not attempt to level the bridge when it made other repairs. It was the unevenness of the bridge that was alleged to have caused the plaintiff's fall. Assuming that this had indeed been the cause of plaintiff's fall the court in *Smith* addressed the issue of whether the defendant could be held liable for plaintiff's injuries. Answering this in the negative the court stated: "[W]e are cited no case which holds an abutting property owner liable for injuries caused by reason of a defectively constructed sidewalk *built or repaired by such property owner several years prior to the accident,* as in this case." (Emphasis supplied) *Id.* at p. 55.

The facts of this case closely resemble those in the *Smith* case. Here Interco undertook to repair the public sidewalk in front of its building due to the fact that individuals going to and from the building frequently used the public sidewalk. It is conceded by the parties that Interco was under no duty to make these repairs. The evidence at trial established that the repairs made by Interco were approximately three years old. As in *Smith,* this court is unaware of any authority which would impose a duty upon Interco to maintain or re-repair the public sidewalk due to their previous efforts on its part.

■ Ms. Rauh relies on *Berry v. Emery, Bird, Thayer Dry Goods Co., supra,* and *Brown v. Michigan Millers Mutual Insurance Company, Inc.,* 665 S.W.2d 630, 634

[5] (Mo.App.1983), for the proposition that liability may be imposed upon one who is under no duty to act but does so voluntarily and gratuitously. As Ms. Rauh points out, once one assumes to act under such circumstances they are under a duty to act carefully. However, this in-and-of-itself is insufficient to impose liability upon Interco. Not only did Interco's act of repairing the sidewalk take place three years prior to this occurrence but the record in the trial court fails to reflect any attempt on the part of Ms. Rauh to establish that Interco failed to exercise due care in making the repairs or that the repairs were made improperly. The liability which can be imposed here can be no broader than Interco's assumption of duty. *Teichman v. Potashnick Construction, Inc.,* 446 S.W.2d 393, 400 (Mo. banc 1969).

Ms. Rauh's theory for imposing liability upon Interco can best be outlined as follows:

(A) Interco's affirmative act of repairing the public sidewalk three years prior to the occurrence subjected Interco to a duty to make such repairs carefully;

(B) The asphalt Interco used to repair the sidewalk deteriorated and left a hole in the public sidewalk which allegedly caused Ms. Rauh's fall and injuries;

(C) Since Interco is the one who repaired the public sidewalk it is responsible for the presence of the deteriorating asphalt and thus created an unsafe condition;

(D) Given A, B and C, liability should be imposed upon Interco because:

(1) Interco failed to meet its duty to act carefully in repairing the sidewalk; and

(2) the repair constituted an affirmative act on Interco's part which created a hazardous artificial condition, thus falling under an exception to the general rule that the duty to maintain public sidewalks lies with the municipality.

However, initially, Ms. Rauh failed to allege or present any evidence at trial to suggest that Interco's actual performance of the repair was in any way negligent.

■ Second, her argument is equivalent to saying that once an individual assumes to act he not only has a duty to act carefully in its performance but he must continue to be responsible for the product of the act for at least a period of three years. In other words, she would have this court hold that Interco assumed a duty to maintain any repairs it undertook to perform. Such a result is contrary to the law.

Ms. Rauh's argument also overlooks the simple fact that a hole existed in the public sidewalk before Interco acted to employ the asphalt material to fill the existing void in the public sidewalk. The deterioration of the asphalt over the intervening three years merely uncovered an already existing hole.

■ The question whether Interco created a dangerous condition would ordinarily be a question of fact for the jury. *Smith,* at 275 S.W. at 55. But to raise a jury question of this kind requires a showing that Interco did something more than simply repair an already existing nuisance. The condition of the public sidewalk at the time of this occurrence, according to the evidence, was not the result of the repairs made three years hence, but rather the reappearance of the pre-existing hole, a natural consequence of the passage of time.

This conclusion is in accord with the decision in *Teichman, supra.* The court in *Teichman* held that "the user of a road can make repairs and perform maintenance which will improve the condition of the road temporarily without the assumption of the legal duty to use ordinary care to keep the road reasonably safe." *Id.* p. 400 [8]. Despite the temporary nature of the repair involved in *Teichman* the court's reasoning applies equally well to the facts of this case.[1] The asphalt material used by Inter-

1. The defendants in *Teichman* were using a softer, granular substance known as "chat" to fill broken areas in a public highway.

co can be assumed to have lasted its normal life span, there being no evidence presented to the contrary.

■ Additionally it should be noted that other courts have found that even if one such as the defendant has assumed a duty to maintain a public sidewalk no liability will attach in favor of one who has had notice of the abandonment of such a duty, 39 Am.Jur.2d, Highways, Streets, and Bridges § 361, p. 746. Ms. Rauh was not only aware of, but quite familiar with the public sidewalk's state of disrepair. Her actual notice here precludes holding Interco liable, and we reverse the judgment of the trial court.

Pursuant to the directions of Rule 84.14 we reverse the judgment of the trial court and enter judgment for the defendant, Interco.

CRANDALL, P.J., and PUDLOWSKI, J., concur.