Edmund J. LANGE, Jr., Plaintiff/Appellant,

v.

WEHRENBERG THEATERS, INC., Boatmen's National Bank, and City of Clayton, Defendants/Respondents.

No. 63449.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 21, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 1994.

Application to Transfer Denied March 22, 1994.

---

Gary A. Growe, P.C., Clayton, for plaintiff/appellant.

Evans & Dixon, Eugene K. Buckley, Thomas L. Fiala, St. Louis, for Wehrenberg Theaters.

Brown & James, P.C., Jeffrey L. Cramer, St. Louis, for Boatmen's Nat. Bank.

Robert J. Selsor, Clayton, for City of Clayton.

PUDLOWSKI, Judge.

This case raises the issue of whether abutting property owners or lessees may assume a duty to pedestrians to inspect and maintain public sidewalks absent any affirmative action on their part which creates a dangerous condition.

Edmund J. Lange, Jr. appeals from separate grants of summary judgment to Wehrenberg Theaters, Inc. and Boatmen's National Bank. The relevant facts are as follows.

Boatmen's Bank is trustee and Wehrenberg Theaters is lessee of the property housing the Shady Oak Theater on Forsyth Boulevard in Clayton, Missouri. Appellant Lange is confined to a wheelchair. On January 9, 1989, Lange was being wheeled past the Shady Oak Theater when his wheelchair struck a pothole depression in the sidewalk and flipped over. Lange's face struck the sidewalk. He sustained severe injuries.

Lange brought suit against Boatmen's National Bank [hereinafter trustee], Wehrenberg Theater [hereinafter lessee], and the City of Clayton for their negligent maintenance of the sidewalk in front of the Shady Oak Theater. The trial court granted trustee's and lessee's separate motions for summary judgment on the ground that they owed no duty to an injured party and certified these orders as final for purposes of appeal pursuant to the provisions of Rule 74.01(b).

Lange concedes, that under Missouri law, a municipality has a nondelegable duty to maintain public sidewalks. He argues, however, that a municipality is not necessarily exclusively liable and that the trial court erroneously granted the motions for summary judgment because material questions of fact existed as to whether trustee and lessee, by their actions, assumed an obligation to Lange to properly inspect and maintain the sidewalk fronting the Shady Oak Theater. Lange claims that a combination of the following factors evidences trustee's and lessee's assumption of such a role: a Clayton ordinance imposing a duty on abutting landowners to maintain public sidewalks; a lease provision concerning maintenance of sidewalks; lessee's periodic inspections of and repairs to the sidewalk; and trustee's and lessee's responses to a deposition question and an interrogatory.

■ In determining whether a grant of summary judgment was proper, we must consider the record in the light most favorable to an appellant. *Scott v. Thornton*, 484 S.W.2d 312, 314 (Mo.1972). A grant of summary judgment should be affirmed when there is a showing of facts negating an essential element of plaintiff's *prima facie* case unless the non-moving party is able to show,

through affidavits, depositions, answers to interrogatories, or admissions on file, that facts relied on by the moving party to establish its right to judgment as a matter of law, are genuinely disputed. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993). " 'Genuine' implies that the issue, or dispute, must be a real or substantial one— one consisting not merely of conjecture, theory and possibilities." *Id.* at 378.

In the case at hand, Lange brought a negligence action against trustee and lessee. Accordingly, as part of his *prima facie* case, he must show the existence of a legal duty flowing from trustee and lessee to himself. He is unable to do so. The trial court's grants of summary judgment were therefore proper.

### Grant of Summary Judgment to Trustee

■ The award of summary judgment to trustee was appropriate since, prior to the accident, trustee leased the property and, under Missouri law, in the absence of a contrary agreement, the duty to make necessary repairs to property and the liability flowing from the failure thereof, is on the lessee and not on the owner. *Thomas v. Barnes*, 634 S.W.2d 554, 555 (Mo.App.E.D.1982) (quoting *Gray v. Pearline*, 328 Mo. 1192, 43 S.W.2d 802, 804 (1931)). This is because the lease of premises is regarded as a sale during its term. *Thomas*, 634 S.W.2d at 555 (citing *Warner v. Fry*, 360 Mo. 496, 228 S.W.2d 729, 730 (1950)). The award of summary judgment to trustee is also supportable for the same reasons which purge lessee of any liability to Lange.

### Grant of Summary Judgment to Lessee

We find that lessee was also entitled to summary judgment. Although trustee technically owned a portion of the sidewalk, neither trustee nor lessee attempted to assert ownership, or restrict passage or usage, of this area since 1977. The private portion of the sidewalk was essentially "dedicated to public use as part of the street and accepted by public user." *Morgan v. Kroger Grocery & Baking Co.*, 154 S.W.2d 44, 49 (Mo. banc

1941); *See also, Callaway v. Newman Mercantile Co.*, 321 Mo. 766, 12 S.W.2d 491, 493–494 (1928). The entire area from the building to the street is considered "public sidewalk" for purposes of this lawsuit.

■ Generally, an abutting landowner has no duty to repair or maintain public sidewalks. *Hart v. City of Butler*, 393 S.W.2d 568, 582 (Mo.1965) (citations omitted); *Rauh v. Interco, Inc.*, 702 S.W.2d 497, 500–501 (Mo.App.E.D.1985) (citations omitted). This duty rests with the municipality and is nondelegable. *Hart*, 393 S.W.2d at 582 (citations omitted); *Riley v. Woolf Bros.*, 236 Mo.App. 661, 159 S.W.2d 324, 328 (1942).

■ There are only two exceptions to this rule. First, an abutting landowner (or lessee) may be held liable if he or she makes "special use" of the sidewalk. *Rauh*, 702 S.W.2d at 501 (citations omitted); *Schmidt v. Keane*, 810 S.W.2d 701, 702–703 (Mo.App. E.D.1991). This exception applies when an abutting property owner (or lessee) uses the sidewalk in an alternative manner, for example, as a driveway, or adds an obstruction to the property, such as stairs. *Rauh*, 702 S.W.2d at 501 (citing *Stein v. Mansion House Center*, 647 S.W.2d 918, 919 (Mo.App. E.D.1983)) (further citations omitted). It does not apply to using the sidewalk as is, as an ingress or egress to an owner's property. Lange does not contend, and we do not believe, that this exception applies in the present case.

■ The second exception exists when the property owner has acted negligently and *artificially created* a dangerous condition. *Hart*, 393 S.W.2d at 582 (citations omitted), *Rauh*, 702 S.W.2d at 501 (citations omitted). The owner, however, must cause the dangerous situation through his affirmative actions and not his omissions. *Hart*, 393 S.W.2d at 582; *Berry v. Emery, Bird, Thayer Dry Goods Co.*, 357 Mo. 808, 211 S.W.2d 35, 40 (1948) (citations omitted). The evidence in this case demonstrates that neither trustee nor lessee *affirmatively created* an *artificial* and dangerous condition. Lange's wheelchair was caught in a pothole which neither trustee nor lessee affirmatively acted upon prior to the accident. This second exception

is, therefore, also inapplicable. Because this case does not fall within either of these exceptions, the duty flowing towards Lange to maintain the sidewalks remains with Clayton.

Lange appears to be trying to create a third exception to the general rule. He argues that a municipality is not necessarily the only party responsible for maintenance of a sidewalk and that a landowner or lessee is also liable when they take actions evidencing an intent to assume a duty to injured pedestrians. A similar argument was previously raised in *Teichman v. Potashnick Construction, Inc.*, 446 S.W.2d 393, 399 (Mo. banc 1969), *Rauh v. Interco, Inc.*, 702 S.W.2d at 501–502, and *Sheppard v. McFadden Lighting Co.*, 816 S.W.2d 12, 14 (Mo.App.E.D. 1991). In *Teichman*, defendant repaired a portion of a public road in order that its trucks be able to drive upon it. Plaintiff was subsequently injured when the front wheel of the truck in which he was a passenger ran into a hole in the road causing the truck to spin around and hit a tree. Plaintiff alleged that in repairing a portion of the road, defendant became legally obligated to use ordinary care to repair and maintain the road. *Teichman*, 446 S.W.2d at 399. The court directed a verdict for defendant after the close of the plaintiff's case on the grounds that defendant did not owe a duty to plaintiff. On appeal, the court found that defendant only intended to make temporary repairs so that the road would be passable, not reasonably safe, and that defendant did not, by way of its repairs, make the road more hazardous than it was before the repairs. *Id.* at 399–400. Noting that "liability is only as broad as the duty assumed" the court held that "a user of the road can make repairs and perform maintenance which will improve the condition of the road temporarily *without the assumption of the legal duty* to use ordinary care to keep the road reasonably safe." *Id.* at 400 (emphasis added). In *Rauh*, defendant, an abutting landowner, used asphalt to repair an existing hole in a public sidewalk. Three years later the asphalt deteriorated and the hole resurfaced. Consequently, plaintiff sustained injuries in the precise area defendant had earlier repaired. Plaintiff claimed that defendant, by repairing the hole, assumed a duty to maintain the repair job indefinitely.

The court in *Rauh* rejected this argument and reversed the verdict because the repairs had been made over three years prior to the sustained injury, there was no showing of negligence associated with the repairs, and the hole in which Rauh tripped was a natural occurrence which resurfaced when the asphalt defendant utilized to cover it, deteriorated. *Rauh*, 702 S.W.2d at 500. In *Sheppard*, plaintiff died in a car crash which was allegedly due in part to overhanging branches which obstructed the view of a stop sign. Although the tree was located on a public easement and the primary responsibility for caring for the tree rested with the city, defendant had trimmed the tree both prior and subsequent to the accident. Plaintiff therefore claimed that defendant had, by his previous actions, assumed a duty he did not otherwise have to properly care for the tree. As in the case at hand, the trial court granted defendant's motion for summary judgment. Relying on *Teichman* and *Rauh*, the appellate court affirmed the decision of the trial court finding that defendant did not owe plaintiff a duty as a matter of law because plaintiff did not make a submissible case that she was injured as a result of an affirmative act on the part of defendant. *Sheppard*, 816 S.W.2d at 14.

In all three of these cases, based on circumstances similar to those in the case at hand, plaintiffs attempted to hold defendants to a greater duty than they imposed upon themselves and the court refused to increase the duty owed as a matter of law. In *Teichman*, a directed verdict for defendants was affirmed. 446 S.W.2d at 400. In *Rauh*, the court overturned the verdict, noting that the case should never have been submitted to the jury. 702 S.W.2d at 500. In *Sheppard*, the court affirmed a grant of summary judgment to defendant. 816 S.W.2d at 15.

Lange contends that these cases are all distinguishable on their facts and that none of them stand for the proposition that an abutting property owner or user can never be found to have assumed a duty to third parties to inspect and repair public sidewalks in a case in which the property owner does not affirmatively and artificially create the dangerous situation. He claims that the question of whether trustee and lessee assumed a duty is a question of fact and that, based on the totality of the circumstances, a reasonable jury could have found that trustee and lessee assumed a duty by their actions.

■ As evidence, Lange first cites a Clayton ordinance which he says imposes a duty on the abutting landowner flowing towards an injured pedestrian. Section 20.70 reads as follows:

It shall be the duty of every owner of real estate to keep the sidewalks, curb and gutter and driveway entrance adjacent to his property and in the city in good repair at all times and free from irregularities and offsets in the surface thereof which may render the same unsafe for use. Clayton, MO. Code art. IV, § 20–70.[1]

This ordinance, however, merely creates a duty flowing from owner (or lessee through contractual assignment) to the City of Clayton and the liability for failure to comply with such an ordinance cannot exceed the fine or penalty prescribed therein. *Callaway*, 12 S.W.2d at 494; *Riley*, 159 S.W.2d at 328 (citations omitted). Clayton may, if it chooses, issue a citation to trustee for failure to abide by the ordinance and, under some circumstances, trustee could even be deemed guilty of a misdemeanor for such a violation. But the ordinance does not create a legal duty flowing from trustee or lessee to an injured party.

■ Lange also avers that the lease provision[2], and trustee's and lessee's responses to

---

1. The ordinance further provides that the director of public works may require the property owner to perform certain repairs. If the property owner does not complete the repairs within the specified time he or she is deemed guilty of a misdemeanor.

2. Paragraph seven of the lease Wehrenberg signed reads as follows:

During the term of this lease, Lessee shall keep and maintain the demised premises and the buildings and other improvements thereon, and the appurtenances and sidewalks and alleys adjoining the same, in a safe, clean and wholesome condition and in accordance with all local public ordinances affecting said premises, and shall at all times, at its expense, comply with all laws, local ordinances or regu-

a deposition question[3] and an interrogatory[4] are admissions of their assumption of a duty to Lange. Review of the record reveals otherwise. The lease provision merely created a contractual obligation flowing from lessee to trustee and in no way affected third party rights. Trustee's and lessee's responses to the interrogatory and the deposition question only appear to be an acknowledgement of their duty to the City of Clayton.

■ Finally, Lange argues that lessee's periodic inspections and repairs to portions of the sidewalk constituted an assumption of duty as to the entire sidewalk. We do not agree. Prior to Lange's fall, lessee repaired part of the sidewalk but not the portion where the accident occurred. Under Missouri law, liability imposed may be no broader than the duty assumed. *Teichman*, 446 S.W.2d at 400. Accordingly, an abutting owner's (or lessee's) repair of a portion of the sidewalk does not constitute an assumption of a duty to inspect, repair and maintain the entire property. *Id.* Subsequent to the accident, lessee repaired the precise area where Lange fell. This fact, however, does not constitute proof of an assumption of duty to injured pedestrians and it is certainly not proof of causation. Lessee's prior and subsequent repairs to and inspections of the property merely evidence lessee's efforts to comply with the Clayton ordinance as well as general safety standards. We, therefore, decline to create a third exception to the general rule that abutting landowners (or lessees) are not liable to injured pedestrians.

lations of any municipality or other governmental agency applicable to the same....

3. Deposition of Clyde Patton, Wehrenberg Director of Facilities:

Question: So, you would say, it's your understanding that the entire white building to the street is the responsibility of Wehrenberg to maintain that sidewalk [sic].
Answer: As I now understand the lease, yes.

4. Question three of the interrogatories submitted to Wehrenberg and Boatmen's Bank:

Question: State the person or entity who you contend has responsibility to maintain the side-

For the above reasons the trial court's separate grants of summary judgment to trustee and lessee were proper.

Judgment affirmed.

SIMON, P.J., and SMITH, J., concur.

walk and sidewalk area (specifically, that area of the concrete sidewalk which extends from the exterior of the Shady Oak Theater to the curb of Forsyth Boulevard) and if there is a written agreement or document related to the maintenance of the sidewalk, please attach a copy of the said agreement or document to your answers to these interrogatories. If the agreement is verbal, state what the agreement is.
Answer (from both Wehrenberg and Boatmen's): ... Objection. Calls for a legal conclusion. Without waiving said objection, defendant answers as follows: See Lease Agreement attached; in addition, the City of Clayton [sic].