Wilhelmina ROBINSON, Appellant,

v.

Sidney and Flora ARNOLD, Respondents.

No. 73353.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 13, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 18, 1999.

Neil J. Bruntrager, Mary P. Schroeder, Bruntrager & Billings, P.C., St. Louis, for appellant.

James D. O'Leary, John A. Michener, Evans & Dixon, L.L.C., St. Louis, for respondents.

RICHARD B. TEITELMAN, Judge.

Plaintiff Wilhelmina Robinson filed suit against defendants Sidney and Flora Arnold for personal injuries she sustained as a result of her fall on a defective area of public sidewalk located in front of defendants' commercial property. The trial court entered summary judgment in favor of defendants on the ground that, as a matter of law, defendants owed no duty to plaintiff to maintain the sidewalk. On appeal, plaintiff contends that although the general rule is that abutting landowners do not owe pedestrians a duty to maintain the public sidewalk, the facts of this case fall within a recognized exception to that rule. We affirm.

### Facts

In the spring of 1994, plaintiff was shopping at the Salvation Army Store located at 3949 Forest Park Avenue in the City of St. Louis. She had parked her car at a meter in front of 3905 Forest Park Avenue. Plaintiff was coming back from the store carrying packages, and just before reaching her car she slipped and fell on the sidewalk, injuring her right shoulder. Defendants are the owners of the property at 3905 Forest Park Avenue, which they have owned for nearly thirty years. During all of that time the sidewalk in front of the property has always been used by the public, and is a public sidewalk.

City Ordinance 20.26 requires abutting landowners to maintain and repair public sidewalks in the City of St. Louis.

In September of 1991, defendants received a notice from the City concerning the poor condition of the sidewalk and need for repairs. Pursuant to City Ordinance 20.26, the notice requested that defendants either arrange for the necessary repairs within thirty days or else appeal the Street Department's determination of the need for repairs. Slightly more than a month later, after having received no response to its first notice, the City sent defendants a second such notice. Defendants responded by requesting an extension of time. In a letter dated December 6, 1991 the City agreed to such an extension, giving defendants until September 30, 1992 to complete the needed sidewalk repairs.

Nothing further happened until March of 1993, when defendants received another letter from the City. This letter stated that defendants had received prior notice regarding the need for repairs to the defective sidewalk fronting 3905 Forest Park, and warned that defendants would be prosecuted if they failed to promptly contact the City Inspector and arrange for the necessary repairs. Following this notice the defendants, through their agent, entered into informal negotiations with the City concerning the extent of repairs that would be required. Defendants finally did make repairs to the sidewalk, but not until June of 1994, more than two months after plaintiff's accident.

There was also evidence in the record indicating that, prior to plaintiff's accident, defendants had occasionally made repairs to sections of the sidewalk over the course of the many years they had owned the property at 3905 Forest Park, although this had not occurred in recent years.

As a result of her fall and injury plaintiff sued defendants herein, as well as the City of St. Louis. The City was later voluntarily dismissed from the action. Plaintiff's suit alleged that defendants negligently permitted the sidewalk to fall into a state of dangerous disrepair, failed to warn her of the dangerous condition, and failed to prevent the condition. Defendants filed a motion for summary judgment, claiming they owed plaintiff no legal duty to repair the sidewalk.

The trial court agreed and entered judgment accordingly. This appeal followed.

*Discussion*

■ Summary judgment is appropriate where there is no dispute as to material facts, and the facts as admitted show a legal right to judgment for the movant. *ITT Commercial Finance v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). The case at hand involves no genuine dispute as to any matter of material fact, and thus the question presented is solely one of law.

■ The issue is whether defendants had a duty, owed to plaintiff, to repair the defective sidewalk.[1] In her single point on appeal plaintiff contends that the trial court erred in granting summary judgment for defendants in that defendants had assumed the duty to repair the public sidewalk, and therefore should be held liable.

■ In general, a municipality has the *nondelegable* duty to maintain its public sidewalks and keep them in a reasonably safe condition. *Hart v. City of Butler*, 393 S.W.2d 568, 582 (Mo.1965); *Rauh v. Interco, Inc.*, 702 S.W.2d 497, 500–501 (Mo.App. E.D.1985); *Lange v. Wehrenberg Theaters, Inc.*, 870 S.W.2d 880, 883 (Mo.App. E.D.1993). There is no duty on the part of an abutting landowner, owed to individuals, to maintain or repair a municipality's public sidewalk. *Rauh* at 500–501. The abutting landowner is therefore not liable for injuries sustained by a pedestrian as a result of defects in the sidewalk. *Id.* at 502. Although a municipality may by ordinance require an abutting landowner to keep the sidewalk in safe condition and good repair, the landowner's duty in that regard is owed solely to the municipali-

ty, not to any injured individual. *Lange v. Wehrenberg Theaters, Inc.*, 870 S.W.2d at 884; *Callaway v. Newman Mercantile Co.*, 321 Mo. 766, 12 S.W.2d 491, 494–495 (banc 1928). Such an ordinance in no way creates a legal duty flowing from the landowner to an injured party, and the landowner's liability for failure to comply with such ordinance is limited to the fine or penalty prescribed therein. *Lange* at 884.

■ There are two recognized exceptions to this general rule that an abutting landowner has no duty to repair the public sidewalk. One is the so-called "special use exception," which applies when an abutting landowner puts the sidewalk to some special use other than merely as a sidewalk in order to serve his own purposes. *Rauh v. Interco, Inc.*, 702 S.W.2d at 501. The second exception to the general rule is that an abutting landowner may be held liable when, by his own "affirmative act," he "creates a dangerous condition" in the sidewalk. *Hart v. City of Butler*, 393 S.W.2d at 582. See also *Rauh v. Interco, Inc.*, 702 S.W.2d at 501, and *Lange v. Wehrenberg Theaters, Inc.*, 870 S.W.2d at 883.

Plaintiff contends that the latter exception applies to the facts of this case. She argues that defendants negligently created an unsafe condition in the sidewalk by allowing it to deteriorate and failing to take any action to repair it for a period of nearly three years despite repeated notices from the City and knowledge of its unsafe condition. Further, she claims, defendants' representation to the City that they would comply with the repair notices in return for their requested extension of time amounted to an "affirmative act" on their part, and by engaging in such conduct defendants assumed a duty to repair the sidewalk.[2]

1. The elements of a negligence claim are (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) a breach of that duty, and (3) an injury to plaintiff that was proximately caused by the defendant's breach. *Jones v. Ames*, 901 S.W.2d 160, 162 (Mo.App. E.D.1995).

2. The record on appeal contains no express indication that defendants ever promised the City anything in return for the extension of time they were granted by letter dated December 6, 1991.

Our standard of review, however, requires us to view the record in the light most favorable to the party against whom summary judgment was granted, and to accord that party the benefit of all reasonable inferences. *ITT Commercial Finance v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). With this in mind, one could infer that defendants implicitly promised the City timely performance of repairs in return for the extension they sought and were granted. For purposes of discussion in the re-

We do not agree.

■ First, this exception to the general rule applies only where the abutting property owner has brought about a dangerous condition in the sidewalk *through his affirmative actions and not his omissions.* *Lange v. Wehrenberg Theaters, Inc.,* 870 S.W.2d at 883. Here, however, the defendants' complained of conduct – failure to repair the sidewalk after receiving notices from the City and after requesting an extension of time – consists in essence of omissions, not affirmative acts. Merely allowing the sidewalk to remain unrepaired or even to deteriorate further, despite having made some repairs in the past, is not an "affirmative act" that can impose liability on the abutting landowner. *Lange* at 883–84.

Second, even if we were to assume that defendants' implicit agreement with the City to effect the needed repairs did in a sense constitute an "affirmative act," still, the case law clearly holds that in order to make a landowner liable his affirmative act must be one which actually *creates* the dangerous condition of the sidewalk. *Berry v. Emery, Bird, Thayer Dry Goods Co.,* 357 Mo. 808, 211 S.W.2d 35, 40 (1948); *Hart v. City of Butler,* 393 S.W.2d at 582; *Rauh v. Interco, Inc.,* 702 S.W.2d at 501; *Lange v. Wehrenberg Theaters, Inc.,* 870 S.W.2d at 883. Here, however, the admitted facts show that defendants' "agreement" with the City to do the sidewalk repairs, and their subsequent failure or at least dilatoriness in following through on that agreement, did not *create* the defective condition of the sidewalk. Rather and at most, it simply prolonged a condition of disrepair that already existed.

In any event, defendants' agreement with the City to make repairs, as well as their subsequent delay in doing so and negotiations with the City regarding required extent of repairs, cannot be considered the proximate cause of plaintiff's fall and injury. One of the essential elements of actionable negligence is that it must have been the proximate cause of injury. *Teichman v. Potashnick Construction, Inc.,* 446 S.W.2d 393, 398 (Mo. banc 1969).

■ Plaintiff also argues that defendants' agreement with the City means they assumed a duty of repair under the theory that liability may be imposed on one (such as a "good samaritan") who, though under no duty to act, does so voluntarily and gratuitously. This argument completely overlooks the fact that the liability that may be imposed on such a basis cannot be any broader than the duty assumed. *Teichman v. Potashnick Construction, Inc.,* 446 S.W.2d at 400; *Rauh v. Interco, Inc.,* 702 S.W.2d at 502; *Lange v. Wehrenberg Theaters, Inc.,* 870 S.W.2d at 885. By representing to the City that they intended to comply with the City's sidewalk repair notices if granted an extension of time to do so, defendants were simply assuming a duty to obey City Ordinance 20.26. But "the liability for failure to comply with such an ordinance cannot exceed the fine or penalty prescribed therein." *Lange* at 884.[3]

Plaintiff's contention that defendants assumed a duty of repair by professing an intent to comply with City Ordinance 20.26 is similar to the argument rejected by this Court in *Lange v. Wehrenberg Theaters, Inc., supra.* As in that case, so here too, the argument is essentially an attempt to "create a third exception to the general rule." *Lange* at 883. In this instance, moreover, the proposed "exception" is one which would effectively swallow the rule. If we were to hold that an abutting property owner can be held liable to individuals for promising the City to make requested sidewalk repairs but then failing to promptly do so, it would be tantamount to holding that the City *can,* in effect, delegate to others its responsibility for maintaining its public sidewalks.

It is the rule in Missouri that a municipality has a nondelegable duty to maintain its public sidewalks; the facts of this case do not

---

mainder of this opinion, we will assume *arguendo* the existence of such an agreement.

**3.** For the same reason, the facts of this case also do not support recovery against defendants under a theory of negligence per se. See *Jackson v. City of Blue Springs,* 904 S.W.2d 322, 335–36

(Mo.App. W.D.1995). A duty enunciated in a city ordinance may not override principles of liability established by the common law of the state. *Mediq PRN Life Support Services, Inc. v. Abrams,* 899 S.W.2d 101, 110 (Mo.App.E.D.1994).

fall within either of the two recognized exceptions to that well-settled rule.

Accordingly, the judgment is affirmed.

CRAHAN, J., concurs.

JAMES R. DOWD, P.J., dissents in separate opinion.

JAMES R. DOWD, Judge, dissenting.

I dissent.

In 1991, the City of St. Louis ("City") twice notified defendants in writing that a portion of the sidewalk fronting defendants' commercial property was in disrepair. On both occasions, defendants were told they would receive thirty days to repair the sidewalk. Defendants concededly agreed to repair the sidewalk but requested an extension of time. The City granted their request on December 6, 1991, giving defendants until September 30, 1992 to fully repair the sidewalk; however, until the sidewalk was fully repaired, the City instructed defendants to patch the problem areas so they were safe for pedestrian traffic. As of September 30, 1992, defendants had taken no action to repair the sidewalk. The City again contacted defendants on March 2, 1993 and advised them to repair the sidewalk or the matter would be referred for prosecution. Defendants finally repaired the sidewalk in June of 1994, almost three years after the first notice of defect and two months after plaintiff's fall.

Although the majority correctly cites the applicable law, I would find that defendants owed a duty to plaintiff to repair the sidewalk based on the particular facts of this case. In my view, by expressly agreeing to repair the sidewalk, defendants assumed a duty that flowed to users of the public sidewalk in general and to plaintiff in particular. A legally binding promise that causes a defect in land to go unrepaired is in fairness and logic the type of legally operative fact that should be recognized by this Court as another kind of affirmative act that can cause an abutting landowner to share the duty to repair.

Unquestionably, the City has a nondelegable duty to repair public sidewalks. Contrary to the majority's belief, finding that defendants assumed a duty to repair is not tantamount to holding that the City can delegate its duty. If a public sidewalk goes unrepaired, the City may not avoid liability on the basis that it contracted with another to repair the defect.[1] The exclusive means for the City to avoid liability is by properly discharging its duty. That the City's duty is nondelegable, however, has no bearing on whether another may assume the same duty.

The majority's refusal to recognize an exception to the general rule that an abutting landowner has no duty to repair public sidewalks is apparently grounded on the fear that doing so would dissuade landowners from promising to repair defective sidewalks. To the contrary, the majority opinion likely will encourage more landowners to promise to repair their sidewalks in exchange for the City's agreement not to prosecute, undoubtedly a valuable legal benefit. By holding that defendants' non-gratuitous promise to repair establishes no duty, the majority significantly reduces a landowner's incentive to honor the promise and, as a result, fewer sidewalks will be repaired in a timely fashion.

I would reverse the judgment and remand for trial.

---

1. In fact, plaintiff named the City as a defendant in the original petition. The City was dismissed as a defendant, however, because plaintiff failed to notify the mayor of the City within 90 days of her injury as required by section 82.210 RSMo 1994.