# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1118

_____

| | |
|---|---|
| Sheila A. Carter, | * |
| | * |
| Plaintiff/Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Western District of Missouri. |
| United States of America, | * |
| | * |
| Defendant/Appellee. | * |

_____

Submitted: September 17, 2004
Filed: February 15, 2005

_____

Before WOLLMAN, RICHARD S. ARNOLD,[1] and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Sheila A. Carter brought a negligence action against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, after she slipped and fell on an ice-covered sidewalk abutting the College Avenue Post Office in Warrensburg, Missouri. Carter appeals the district court's order granting the United States' motion to dismiss and denying her motion for leave to file an amended complaint. We reverse.

_____

[1]The Honorable Richard S. Arnold died on September 23, 2004. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E.

I

On December 11, 2000, between11:30 a.m. and 11:48 a.m., Carter arrived at the United States Post Office in Warrensburg, Missouri.  After parking her vehicle in the street, Carter walked to the rear of her vehicle and stepped up onto the sidewalk from the street.  Carter noticed the surface of the sidewalk looked wet and when she stepped onto the sidewalk, her foot slipped and she immediately fell.  The sidewalk on which Carter fell borders property leased by the post office, but the sidewalk itself is not owned, possessed, or leased by the United States.

Todd Dewitt, an EMT who arrived to assist Carter, described the sidewalk where she was lying as "very slick."  As he knelt down to assist Carter, Dewitt almost slipped.  According to Dewitt, the ice on the sidewalk was clear, without any snow pack, and there was no sand applied to the sidewalk where Carter was lying.  The sidewalk was so slick Dewitt was very concerned he or another EMT would be injured trying to move about on it.

Postmaster Rick Hudson viewed the sidewalk immediately after Carter was removed and stated it appeared slick and there was no sand or gritty substance applied where Carter fell, only ice melt.  He described the sidewalk where Carter fell as ice and snow packed with small holes burned into the snow, and icy where the ice melt was applied.  Hudson admits the sidewalk where Carter fell was icy, slick, dangerous, unsafe, and not in the condition he would have liked it for postal customers.  In his written report, Hudson concluded in the future, sand should be applied to any icy places if ice melt is not working.

James Harms is in charge of building maintenance at the post office.  His job responsibilities include keeping the sidewalk where Carter fell free from snow and ice during regular business hours.  On the day of Carter's fall, Harms applied ice melt to all of the sidewalks surrounding the post office.  After applying the ice melt, Harms

noticed the ice would melt, refreeze, and become slick before he would get around to applying more. Harms testified he nonetheless went to lunch without telling anyone and left the sidewalk unattended. It was during this time Carter fell.

Duane Meeker, Carter's expert witness, stated in his report the post office's treatment of the sidewalk with ice melt, without applying sand, caused the ice to thaw and then refreeze. This in turn, led to the creation of an extremely slippery condition known as "black ice," or ice with unfrozen liquid on the surface. In Meeker's opinion, the post office's actions made the condition of the sidewalk more hazardous than had no action been taken.

Prior to going to the post office, Carter went to a doctor's appointment in Warrensburg at approximately 9:40 a.m. The sidewalk surrounding the doctor's office had been treated with ice melt but the surface was crunchy rather than slick. Carter then went to the Johnson County Courthouse, approximately two blocks from the post office. The sidewalk in front of the courthouse was clear and dry with no ice or moisture on it. After leaving the courthouse, Carter went directly to the post office.

It was approximately ten degrees Fahrenheit and windy at the time Carter fell. Carter submitted several weather reports to the district court summarizing the weather conditions. The reports, however, are inconsistent and thus it is disputed whether it was raining when Carter fell. One report states for the twenty-four hour period ending at 8:00 a.m. the day of the fall, only two-tenths of an inch of rain had fallen, and for the twenty-four hour period following Carter's fall, only one-tenth of an inch of rain and one inch of snow or ice pellets fell. Another record states only trace amounts of rain fell between 3:00 a.m. on December 11, 2000, and the time Carter fell. Specifically, the report states one-hundredth of an inch of rain fell at approximately 2:53 a.m. on December 11, 2000. Conversely, Tom West, a post office

employee, testified rain was falling at approximately 9:00 a.m. on December 11, 2000.

As a result of the fall, Carter suffered a complex fracture to her left shoulder and has undergone numerous surgeries. She has little function in her left shoulder and very limited use of her left arm. Carter's medical bills exceed $185,000.

Carter filed a five-count complaint against the United States. Because Carter does not contest the dismissal of the first three counts, we only consider Counts IV and V. The relevant portion of Count IV asserts: The United States leases the property on which the sidewalk is located. The United States voluntarily assumed the duty to remove snow from the sidewalk by custom and practice, or in the alternative, the United States had undertaken the duty to remove snow and ice from the sidewalk and performed the duty negligently. There was ice and moisture on the sidewalk and the United States could have known of this condition prior to Carter's fall. The United States failed to use ordinary care to remove the ice and moisture from the sidewalk, place salt, sand or cinders or other gritty substance on the sidewalk, and failed to warn adequately of the existence of ice and moisture on the sidewalk. The United States failed to place sufficient ice melt on the sidewalk to remove the ice and moisture or failed to reapply the ice melt with sufficient frequency.

Count V makes substantially the same allegations as Count IV, except Carter asserts: The United States, through its agents or employees, knew or had information from which the United States should have known individuals such as Carter would not discover such condition or realize the risk of harm.

The district court concluded the complaint failed to state a valid cause of action against the United States because it failed to allege the United States assumed a duty of care through the affirmative conduct of the postal employees. Additionally, the court held if Carter were permitted to amend the complaint to allege affirmative

conduct by the post office employees, her claims would still fail as a matter of law. The district court concluded under Missouri law a landowner who gratuitously attempts to clear a public sidewalk of ice does not assume a duty of care to a pedestrian.

Carter moved to amend the complaint to allege, among other things, post office employees negligently and artificially created the black ice conditions making the sidewalk more unsafe than had no action been taken. The district court, however, denied the motion, stating:

> Carter's Motion to Amend comes almost fifteen months after the filing of her original complaint. It also follows the close of discovery and the filing of Defendant's motion to dismiss or for summary judgment. Were Carter allowed to amend her pleading at this late stage in the litigation, Defendant would suffer undue prejudice in that all the theories of liabilities against which Defendant had prepared its case would be rendered moot. The Court views this factor sufficient to warrant denying Carter's motion to amend.
>
> However, beyond the undue prejudice to Defendant, Carter's motion to amend should be denied because her proposed amendment would be a futility.

In particular, the district court held even if the United States owed Carter a duty, Carter's claim would fail because Carter did not present evidence demonstrating "but for" causation. The court noted:

> According to Carter's testimony, she fell after only getting one foot on the sidewalk, and then she fell forward. She did not testify that she saw any ice melt residue or any indication on the sidewalk that ice melt had been applied. Carter did testify that at other locations in Warrensburg she had heard a crunching noise when she stepped indicating to her that the walk had been treated with ice melt. Carter did not testify that she

-5-

heard a crunching noise when she stepped onto the sidewalk outside the College Avenue Post Office. But even beyond this failure of evidence, Carter's claim fails because freezing rain was still falling when she had her accident.

On appeal, Carter argues her complaint adequately stated a cause of action against the United States, the United States was not entitled to dismissal of the complaint, and the district court abused its discretion in denying Carter leave to file an amended complaint.

II

We review de novo a district court's dismissal of a complaint for failure to state a claim. Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998) (citation omitted). "A motion to dismiss for failure to state a claim should be granted only if it is clear that no relief could be granted under any set of facts, construing the allegations of the Complaint favorably to the pleader." County of St. Charles v. Missouri Family Health Council, 107 F.3d 682, 684 (8th Cir. 1997) (citations omitted).

Under the FTCA, the United States is liable in tort in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omissions occurred." 28 U.S.C. § 2672. It is undisputed Missouri law controls this case. "In any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and defendant's failure proximately caused injury to the plaintiff." Cupp v. Nat'l R.R. Passenger Corp., 138 S.W.3d 766, 771 (Mo. Ct. App. 2004) (internal quotations and citations omitted). "The existence of a duty is a question of law." Id. (citation omitted).

The United States argues Carter's complaint fails to state a claim because it fails to allege the post office's conduct fell within any recognized exception to the general rule that an abutting property owner has no duty to remove ice and snow from the public sidewalk. Carter argues her complaint adequately states a cause of action against the United States because it assumed the duty to remove snow and ice from the sidewalk abutting the post office.

Under Missouri law, it is clear: "The well-established general rule announced and followed by this court is that the duty and obligation to keep and maintain its public sidewalks in a reasonably safe condition for use by pedestrians rests upon the municipality." Hart v. City of Butler, 393 S.W.2d 568, 582 (Mo. 1965). "There is no duty on the part of an abutting landowner, owed to individuals, to maintain or repair a municipality's public sidewalk" and "[t]he abutting landowner is therefore not liable for injuries sustained by a pedestrian as a result of defects in the sidewalk." Robinson v. Arnold, 985 S.W.2d 801, 803 (Mo. Ct. App. 1998) (citing Rauh v. Interco, Inc., 702 S.W.2d 497, 500-02 (Mo. Ct. App. 1985)). "There are two recognized exceptions to this general rule that an abutting landowner has no duty to repair the public sidewalk. One is the so-called 'special use exception,' which applies when an abutting landowner puts the sidewalk to some special use other than merely as a sidewalk in order to serve his own purposes." Id. (citing Rauh, 702 S.W.2d at 501). "The second exception to the general rule is that an abutting landowner may be held liable when, by his own 'affirmative act,' he 'creates a dangerous condition' in the sidewalk." Id. (citing Hart, 393 S.W.2d at 582; Rauh, 702 S.W.2d at 501; Lange v. Wehrenberg Theaters, Inc., 870 S.W.2d 880, 883 (Mo. Ct. App. 1993)).

Carter argues the public sidewalk doctrine does not govern the outcome of her claim against the United States. She contends: "Assumption of duty with respect to the removal of snow from a non-owned sidewalk is its own separate and distinct theory of liability." Carter cites several Missouri cases for the proposition that "one who acts gratuitously or otherwise is liable for negligent performance of the act, even

though there was no duty to act." Brown v. Michigan Millers Mut. Ins. Co., 665 S.W.2d 630, 634 (Mo. Ct. App. 1983); see also Keenan v. Miriam Found., 784 S.W.2d 298, 305 (Mo. Ct. App. 1990); Gorman v. Wal-Mart Stores, Inc., 19 S.W.3d 725, 731-32 (Mo. Ct. App. 2000); Hoover's Dairy, Inc. v. Mid-American Dairymen, 700 S.W.2d 426, 432 (Mo. 1985) (en banc).  According to Carter, "[t]here is no Missouri case which holds that one cannot assume a duty as to a non-owned sidewalk separate and apart from the 'special use' and 'affirmative action' exceptions."

In Jones v. United States, 703 F.2d 246 (7th Cir. 1983), a case applying Wisconsin law, the plaintiff filed suit under the FTCA after slipping and falling on a sidewalk adjacent to a post office.  The plaintiff alleged the post office was negligent for failing to clear away gravel tossed onto the sidewalk by passing cars. The Seventh Circuit noted there were two exceptions under Wisconsin law to the general rule that the maintenance of public sidewalks was a nondelegable municipal duty, one of which was if the abutting landowner created a dangerous condition on the sidewalk by active negligence. Id. at 248.  The plaintiff in Jones, who brought the appeal in order to "'challenge the district court's refusal to recognize a well-settled and long established theory in Wisconsin law,'" argued "'the post office could assume responsibility gratuitously, and having done so is liable for failure to exercise reasonable care in the undertaking.'"  Id. at 249.  The court, however, concluded "Wisconsin law does not provide a smorgasbord of liability rules from which plaintiff can pick and choose."  Id. at 250.  In the present case, Carter asks us to ignore well established Missouri law governing public sidewalks, and instead allow her to pick Missouri's general assumption of duty law.  We will not.

Alternatively, Carter argues if public sidewalk law applies, her complaint alleges affirmative conduct.  Carter contends "[w]hen plaintiff alleged that the Post Office undertook the duty to remove the snow and ice, plaintiff pled that the Post Office took action (affirmative conduct) which establishes the duty.  Plaintiff should not be required to further elaborate in the Complaint exactly what actions the Post

-8-

Office took to assume the duty." We disagree with Carter's characterization of her complaint.

Carter's complaint alleges the United States failed to place sufficient ice melt on the sidewalk, failed to remove the ice and moisture, or failed to reapply the ice melt with sufficient frequency. It alleges the United States failed to use ordinary care to remove the ice and moisture from the sidewalk, place salt, sand or cinders or other gritty substance on the sidewalk, and failed to warn adequately of the existence of ice and moisture on the sidewalk. Missouri law, however, only imposes a duty on an abutting landowner who artificially creates a dangerous condition if the "dangerous situation" results from "his affirmative actions and not his omissions." Lange, 870 S.W.2d at 883. Here, Carter alleges the dangerous condition resulted from the post office's omissions, not affirmative acts. Thus, the complaint fails to state a viable cause of action. See Romine v. Acxiom Corp., 296 F.3d 701, 706 (8th Cir. 2002) (noting a plaintiff who offers specific facts in her complaint can plead herself out of court) (citations omitted). We conclude the district court properly dismissed the complaint for failing to state a claim under Missouri law.

III

This does not, however, end our inquiry. Carter sought to amend her complaint to plead affirmative conduct by post office employees, i.e., spreading ice melt made the sidewalk more hazardous. The district court denied Carter's motion on the basis of undue prejudice and futility. Specifically, the court held 1) Carter waited too long to seek the amendment, 2) Missouri law suggested a landowner who gratuitously attempts to clear a public sidewalk of ice assumes no duty of care to pedestrians, and 3) Carter failed to present evidence of causation. We consider each of these arguments in turn.

A district court's denial of leave to file an amended complaint is reviewed for an abuse of discretion. Wisdom v. First Midwest Bank of Popular Bluff, 167 F.3d 402, 409 (8th Cir. 1999) (citation omitted). "Leave to amend under Federal Rule of Civil Procedure 15(a) 'shall be freely given when justice so requires.'" Hammer v. City of Osage Beach, 318 F.3d 832, 844 (8th Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). "There is, however, no absolute right to amend a pleading." Id. (citing Becker v. Univ. of Neb., 191 F.3d 904, 908 (8th Cir. 1999)). "Leave should be denied where there are compelling reasons 'such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" Id. (quoting Becker, 191 F.3d at 907-08).

The district court, relying on Hammer, first denied Carter's motion on the grounds of undue prejudice. Hammer, however, involved the denial of a request to file a second amended complaint. We have held "parties should usually be given at least one chance to amend their complaint." Wisdom, 167 F.3d at 409 (citation omitted). Because we prefer to have claims decided on the merits rather than on the pleadings, id. (citations omitted), we conclude the district court erred in denying Carter at least one opportunity to amend her complaint. We also note, the factual underpinnings for the claims asserted in the amended complaint are identical to those in the original complaint. Thus, we divine no undue prejudice to the post office in allowing Carter to amend her complaint.

The district court also denied the motion to amend citing futility. Relying, in part, on Krause v. Laverne Park Ass'n, 240 S.W.2d 724 (Mo. Ct. App. 1951), the district court concluded Missouri law would not impose a duty upon one who gratuitously attempts to clear a sidewalk of ice and snow. We disagree.

In Krause, the plaintiff fell on an icy sidewalk which bordered the defendant's restaurant. Id. at 724. On the day of the fall, the defendant's vice president and

-10-

janitor tried to clear the ice from the sidewalk using a hand scraper to chop the ice, and then scattered salt to melt the patches of ice that stuck to the sidewalk. Id. at 725. The plaintiff alleged chopping on the ice caused its surface to be roughened so when her foot stepped on a ridge or rough spot, she fell. Id. The court, viewing the plaintiff's claim with some skepticism, stated:

> As against such theory it might at least be argued that people generally attempt to remove ice from sidewalks in the precise manner which Pijut and Rick had employed on the occasion in question; that there is nothing inherently dangerous in such practice; and that proof of such action in conformity with universal custom and usage could not be permitted to supply the basis for an inference of lack of due care. In other words, it is highly questionable whether, in the eternal contest between man and the elements, and especially when man, as in this case, is undertaking to comply with the requirements of a city ordinance enacted for the protection of all the public, he should act at his peril and be held guilty of negligence because the forces of nature have proved too strong for him to overcome.

Id. at 726.

In the end, the court chose not to answer whether the attempts to clear the ice created a duty because "of a lack of evidence that Pijut and Rick had in any manner chopped upon or altered the condition of the ice at the point on the sidewalk where plaintiff fell." Id. In other words, the case was decided on the basis of causation, not the absence of duty. As such, Krause does little to answer whether an abutting landowner whose affirmative acts create a dangerous condition owes a duty to pedestrians who encounter the condition.

We conclude, in accordance with well established Missouri precedent, an "abutting landowner may be held liable to pedestrians when, by his own 'affirmative act,' he 'creates a dangerous condition' in the sidewalk." Robinson, 985 S.W.2d at 803 (citing Hart, 393 S.W.2d at 582; Rauh, 702 S.W.2d at 501; Lange, 870 S.W.2d

-11-

at 883. Because Carter's proposed amended complaint alleges the post office's affirmative acts created a dangerous condition, the district court erred in refusing her the opportunity to amend the complaint.

Finally, we consider whether Carter has presented evidence of causation. The district court concluded Carter could not show the sidewalk where she fell was ice covered, and, assuming it was ice covered, she presented no evidence showing post office employees treated that section of sidewalk with ice melt. We disagree.

Carter described the sidewalk as looking wet and it felt like stepping on ice. DeWitt, the EMT, stated the sidewalk was extremely slick at the location of Carter's fall, and his pant leg froze to the surface of the sidewalk while he was kneeling. Harm testified he repeatedly treated all of the sidewalk, including the area where Carter fell. Postmaster Hudson testified the area where Carter fell had been treated with ice melt but was nonetheless extremely slippery. Finally, Carter's expert indicated the post office's application of ice melt caused the ice to thaw and then refreeze, creating black ice, which is more slippery than regular ice or snow.

We also disagree with the district court's conclusion that the undisputed evidence shows it was raining at the time Carter fell. Carter testified the sidewalk in front of the courthouse, two blocks away, was dry moments before she fell. She also presented weather reports showing the rain may have stopped prior to her fall. Thus, it cannot be said the post office's use of ice melt was not a cause of Carter's fall.

IV

For the reasons stated herein, the judgment of the district court, inasmuch as it relates to the denial of appellant's motion to amend her complaint, is reversed and the case is remanded for further proceedings consistent with this opinion.

_____

-12-